<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PATRICIA AIKEN**, *et al.*, | Civil Action No. 14-811 (WJM) |
| **Plaintiffs.** | |
| v. | |
| **KIRK EADY**, *et al.*, | <u>**MEMORANDUM OPINION**</u> |
| **Defendants.** | |

<u>**FALK, U.S.M.J.**</u>

Before the Court are three formal motions that have been filed: (1) Plaintiffs' motion for leave to file an amended complaint [ECF No. 37]; (2) Plaintiffs' motion to enforce a Rule 45 subpoena served on the United States Attorney for the District of New Jersey [ECF No. 44]; and (3) the U.S. Attorney's cross-motion to quash Plaintiffs' subpoena [ECF No. 46].

For the reason set forth below, the motion to amend is **granted**, the motion to enforce the subpoena is **denied without prejudice**, and the cross-motion to quash is **granted without prejudice**.

I.      **Relevant Background**

Plaintiffs commenced the action on February 7, 2014, by filing a complicated twelve-count Complaint including claims brought under: (1) the Federal Wiretapping Statutes, 18 U.S.C. §§ 2511(1)(c) and 2520; (2) the New Jersey Wiretapping Act, N.J.S.A. 2A:156-24; (3) New Jersey's Law Against Discrimination, N.J.S.A. 5:10-1, *et seq.*; (4) Section 1983; and (5) New Jersey common law, including for Intentional Infliction of Emotional Distress and Intrusion Upon Seclusion.

Plaintiffs are Patricia Aiken, EdPDLaw LTD., Luis Ocasio, Daniel Murray and Omar Ortiz. (Compl., ¶¶ 1-5.) Aiken is the owner of EdPDLaw, which provides Union Support Services for law enforcement unions and their memberships in a variety of matters, including officer discipline. (Compl., ¶ 13.) Ocasio, Murray and Ortiz are (or were) employed as corrections officers by the Hudson County Department of Corrections. (Compl., ¶¶ 3-5.) They were also leaders of the Local Union. (Id.)

Defendants are Kirk Eady, Oscar Aviles, Thomas DeGise, the Hudson County Department of Corrections and Hudson County. (Compl., ¶¶ 16-18.) Aviles was the Director of the Hudson County Department of Corrections; Eady was the Deputy Director. (Id.)

In 2011, Aiken and EdPDLaw, as well as the Plaintiff union officials, commenced an investigation into Defendants Aviles and Eady, specifically as to their correct titles and whether they were entitled to remain in the Police and Fire Pension systems. (Compl., ¶ 26.) It is alleged that the results of the pension investigation, which were

released in a public report, showed that Defendants held civilian titles but continued to draw pensions.  (Compl., ¶¶27-30.)  After the pension investigation was released, Plaintiffs began to receive harassing anonymous phone calls and suspect that their phones were tapped.

Plaintiffs came to suspect that Eady had tapped their phones and was recording their private phone conversations. Around the same time, Plaintiffs were allegedly subject to a series of retaliatory events, including an allegation that Eady submitted information to the KKK indicating that Murray and Aiken were interested in becoming members, with the membership information being sent to Murray's attention at the Hudson County Jail.  (Am. Compl., ¶¶ 53-54.)  Plaintiffs claim that this was done to portray Murray and Aiken as racist, placing them in professional and personal danger from the Jail's majority African-American population.  (Id.)

Plaintiffs Ortiz, Murray and Ocasio eventually "tipped off and assisted the Federal Government in their investigation of Eady," and claim as a result they have been subjected to harassment, intimidation, unwarranted discipline, and threats of violence. (Certification of James Grimley, Esq., ¶ 9.)  Ultimately, Ortiz was terminated; Ocasio was placed on "stress related disability"; and Murray was placed on "stress leave."  (Id.)

In 20014, Eady was criminally charged in this Court with violations of the Federal Wiretapping Act arising out of the conduct alleged in this case (Crim. No. 14-277 (JLL)). Judge Linares held a jury trial in March 2015.  (See Crim. No. 14-277; ECF No. 40-41.)

Eady was found guilty and sentenced to 21-months in federal prison. (Id. at ECF No. 57.) The conviction is presently on appeal to the Third Circuit. (Id. at ECF No. 58.)

## II. Schedule in this Case

The Complaint was filed on February 7, 2014. An initial conference was held on April 11, 2014. In light of the parallel criminal matter, the case did not materially progress while the criminal case was pending.

On August 25, 2015, the Court entered the first scheduling order in the case. Discovery is scheduled to close March 20, 2016. Any motions to amend were due by November 15, 2015.

## III. Present Motions

### A. Plaintiff's Motion for Leave to File An Amended Complaint

On November 11, 2015, Plaintiffs filed their motion for leave to file an amended complaint. The proposed amendment seeks to: (1) add a new defendant, Tish Nalls Castillo; and (2) add 4 additional counts consisting of a CEPA claim; N.J. LAD and Title VII claims for racial discrimination arising out of the KKK incident; and a claim for violations of the New Jersey Civil Rights Act.

Plaintiffs claim that Nalls Castillo served as provisional Deputy Director and provisional Director during the investigation and prosecution of Eady. Plaintiffs also claim that Castillo is a "close friend and confidante of Eady, and whose name was brought out in the Eady criminal trial as having knowledge of Eady's conduct." Plaintiffs

contend that Castillo signed off on or orchestrated retaliatory discipline against the Plaintiffs.

Defendants submitted a two page letter opposing the motion to amend. The letter states that the allegations against Nalls Castillo are cursory and that there is no basis to name her individually in the amended pleading. They also include a one sentence "objection" saying that Thomas DeGise, Hudson County Executive, should have never been named in the original complaint.

The motion to amend was made prior to the deadline in the scheduling order and a proposed pleading was attached. Therefore, the general and liberal standards of Rule 15 apply.

Rule 15 provides that once a responsive pleading has been filed, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. Foman v. Davis, 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave to amend is a matter committed to the court's sound discretion. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1970). The Third Circuit has "made clear that there is to be a liberal use of Rule 15 to amend complaints so as to state additional causes of action." Leased Optical Dep't, Inc. v. Opti-Center, Inc., 120 F.R.D. 476, 479 (D.N.J. 1988) (quotes omitted).

5

Here, Defendants do not specifically identify a basis to oppose the motion. Generously read, the letter suggests futility. Certainly, the basis of any futility argument has not been articulated. Futility in the amendment context refers to clear futility equating to frivolousness. It does not require a searching analysis equivalent to dispositive motion practice.

> [Rule 15] does not requires the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense; [it] does require, however, that the newly asserted defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit.

Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990) (emphases added) (citations omitted). Effectively, this means that the proposed amendment must be "frivolous or advance a claim or defense that is legally insufficient on its face . . . ." Marlowe Patent Hold., 293 F.R.D. at 695.

Plaintiffs have alleged sufficient information to withstand a futility challenge. Nalls Castillo's conduct is alleged in at least four paragraphs, including the following:

> 121.   In retaliation for reporting Eady's behavior, and assisting the FBI in investigation into Eady's conduct, the Plaintiffs had their privacy violated, have suffered emotional distress, have been humiliated, some have suffered financially, and were otherwise damaged. The Plaintiffs and families were subjected to retaliation from Defendants by, among other things, and without limitation, facing unwarranted discipline, threats of violence, being overlooked for promotion, harassment, and intimidation. Including but not limited to, Ortiz being illegally suspended without pay and then being terminated in November 2015, based upon charges brought by Eady's close friend and confidant, Defendant Nalls Castillo.

(Proposed Am. Compl., ¶ 121.)

Plaintiff also attaches certain recordings of telephone calls, which they contend show that Nalls Castillo was doing the bidding of Eady in "exacting revenge" against Plaintiffs.

In sum, the motion to amend was made within the deadline in the scheduling order; the opposition to the motion is minimal; the allegations are sufficient to withstand even a properly made futility objection; a proposed amended complaint was provided as the Rules require; and it will not delay the case or prejudice any party, as discovery is still in the early stages.[1]

### B. Plaintiffs' Motion to Enforce a Rule 45 Subpoena and the Government's Cross-Motion to Quash the Subpoena

On November 25, 2015, Plaintiff served a subpoena on the United States Attorney's Office for the District of New Jersey. The subpoena seeks the Government's "entire investigative and prosecutorial file . . . . including all exhibits attached to this subpoena as Exhibit A." In addition to the Government's files, the exhibits include, among other things:

- the actual recordings of the illegally intercepted and retained phone calls;
- recordings of Eady admitting to the conduct;
- evidence that Eady used County equipment to facilitate his actions;

---

[1] Defendants' objection to the inclusion of Thomas DeGise as a defendant in the amended complaint is without merit. DeGise was named as a defendant in the *original* complaint. No motion to dismiss was filed. The amendment does not add him to the case and is not the cause of his remaining in the case. If Defendants believe there is no viable claim against him, they can respond to the amended complaint with a motion to dismiss.

- evidence as to Eady's motivation and ultimate goal in obtaining the wire taps; and
- the manner in how Eady was able to obtain the phone calls.

In response to the motion, Defendant Eady filed an opposition brief. The brief contains somewhat scattershot arguments and proposals in lieu of proceeding with the subpoena. The following is a summary. Eady makes clear that he is asserting his Fifth Amendment rights through conclusion of his appeal and suggests that a continuing stay of discovery is appropriate pending the appeal. The brief then says that the subpoena is largely unnecessary, because, in connection with the appeal, many of the documents sought are available on the Third Circuit's PACER website and could be downloaded. Next, Eady claims that the Privacy Act applies and that should the Court decide to order disclosure under the Act, Eady should be entitled to review the information first to determine whether he would want to "object" to any particular items. Finally, it also seems to argue that civil liability is arguably established on the basis of the criminal conviction, and no discovery is necessary. (Opp'n ¶¶ 24-25.)

The Government filed a cross-motion to quash the subpoena. Its brief contends that Rule 45 subpoenas do not apply in a case where the Government is a non-party. Instead, the Government alleges, the manner in which information must be obtained from a non-party federal agency is through (1) the Freedom of Information Act, 5 U.S.C. § 552; and (2) under the DOJ's *Touhy* regulations, which are regulations promulgated by Department of Justice, pursuant to the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

The Government contends that the *Touhy* decision, discussed below, necessitates that Plaintiffs' subpoena be quashed. The Court does not conclude that the issue is necessarily that straightforward. However, as the circumstances have unfolded here, as explained below, the Plaintiff's motion to enforce the subpoena will be **denied without prejudice**, and the United States' cross-motion to quash be **granted without prejudice**.

In *Touhy,* a state prisoner who had instituted a federal habeas corpus proceeding caused a subpoena *duces tecum* to be served on an FBI agent. Id. at 467. Touhy sought to have certain records produced that he claimed would serve as evidence that his conviction was brought about by fraud. Id. Relying on an administrative regulation adopted by the Department of Justice, the agent declined to produce the records. Id. The regulation required subordinates in the Department served with a subpoena *duces tecum* to disobey the subpoena in accordance with the instructions of the Attorney General. For his disobedience, the FBI agent was found guilty of contempt in the district court. The order of contempt was reversed by the Court of Appeals. Id. at 468

In affirming the judgment of the Court of Appeals, the Supreme Court held that a subordinate federal employee could not be forced to respond to a subpoena contrary to a departmental regulation. Id. at 468. It expressly did not reach, however, whether, if served with a subpoena, the Attorney General could "make such a refusal." Id. at 469.

The *Touhy* decision makes two points. One, the Supreme Court endorsed the use of administrative regulations and centralized decisionmaking as a basis to respond to requests for information: "when one considers the variety of information contained in the

9

files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *deuces tecum* will be obeyed or challenged is obvious." Id. at 468. Two, the Court specifically declined to consider the question of whether the *appropriate* decisionmaker (as opposed to an individual FBI agent) served with a subpoena could refuse to produce the subpoenaed documents on the basis of an administrative regulation.

\* \* \*

In the decades of case law that has followed, *Touhy* has arguably been interpreted somewhat differently, at times turning on the specific individual within a particular agency who was served with the subpoena. *See, e.g.*, *United States Environmental Protection Agency v. GE Company*, 197 F.3d 592, 597 (2d Cir. 1999).

However, it seems clear that, pursuant to *Touhy*, most courts require a party seeking information from the Government, as a non-party, to make a request to the DOJ pursuant to their administrative regulations. The DOJ then has discretion in responding to the request. If the requesting party is dissatisfied with what is obtained in the administrative process, review may be sought either through a separate action commenced pursuant to the Administrative Procedures Act, or alternatively, in the Court from which the subpoena was served pursuant to Rule 45.[2]

---

[2] Some courts require a party seeking information to file an ancillary action under the APA to deem the agency's refusal to provide information arbitrary and capricious. Others consider it a discovery dispute that can be decided in the underlying case without commencing a separate action. *See, e.g.*, *Solomon v. Nassau County*, 274 F.R.D. 455,

The DOJ's regulations prohibit employees from producing material relating to their official duties without prior approval of the proper DOJ official. 28 C.F.R. § 16.22(a). The regulations also require that a written statement be provided setting forth a summary of the information sought and its relevance to the proceeding. 28 C.F.R. § 16.22(c)&(d).

Here, Plaintiffs subpoena will be quashed without prejudice because it was directed only generically to the U.S. Attorney's Office in New Jersey; because it did not contain a written statement of relevance; because there is no indication that the authorized and appropriate DOJ officer was provided the subpoena; and because the subpoena appears overbroad (*e.g.*, seeking "all information" in all investigatory files).

Since the *Touhy* regulations apply to this case, Plaintiffs may, if they so choose, make a *Touhy* request pursuant to the DOJ's regulations. If Plaintiffs are dissatisfied with the administrative response, the Court would consider how to proceed and whether a separate APA action to review the DOJ's decision necessary, or whether to consider it an underlying discovery dispute and resolve it in this case. *See, e.g.*, Footnote 2, *supra*.

---

458 (E.D.N.Y. 2011) (collecting cases on both views); *Ceroni v. 4Front Engineered*, 793 F. Supp. 2d 1268 (D. Colo. 2011) (same). There is no binding authority on the subject. The majority view seems to be to consider the dispute as a discovery matter in the underlying litigation. *See, e.g.*, *Johnson v. Folino*, 528 F. Supp. 2d 548 (E.D. Pa. 2007) (holding that "the court has jurisdiction to determine this discovery dispute; petitioner need not file an ancillary proceeding under the APA."). Here, Plaintiffs fail to address the issue; the Government contends an APA action would be necessary.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for leave to file an amended complaint [ECF No. 37] is **GRANTED**.  Plaintiffs' motion to enforce a Rule 45 subpoena [ECF No. 44] is **DENIED WITHOUT PREJUDICE**.  And the U.S. Attorney's cross-motion to quash Plaintiffs' subpoena [ECF No. 46] is **GRANTED WITHOUT PREJUDICE**.

                                                **s/Mark Falk_____**
                                                **MARK FALK**
                                                **United States Magistrate Judge**

**DATED:  February 4, 2016**