# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS OCASIO,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF HUDSON; HUDSON COUNTRY DEPARTMENT OF CORRECTIONS; KIRK EADY, individually and in his official capacity as Deputy Directory of Hudson County Department of Corrections; OSCAR AVILES, individually and in his official capacity as Director of Hudson County Department of Corrections; THOMAS A. DEGISE, individually and in his official capacity as Country Executive; TRISH NALLS-CASTILLO, individually and in her official capacity as provisional/acting Deputy Director and/or Director of Hudson County Department of Corrections,<br><br>    Defendants. | Civ. No. 2:14-00811<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

    Plaintiff Luis Ocasio brings this action against the County of Hudson ("County"), its Department of Corrections ("DOC"), and four County officials (collectively "Defendants"), alleging multiple violations of state and federal law, in connection with Defendants' harassment of Plaintiff during his employment at the DOC. This matter comes before the Court on Defendant Aviles' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**.

    I.    **BACKGROUND**

    Plaintiff worked at the Hudson County DOC as a Corrections Officer and served as President of the Policemen's Benevolent Association ("PBA") during all relevant times. Second Am. Compl. ("2d Compl.") ¶ 3, ECF No. 68. Defendant Aviles worked as the

1

Director of the DOC during all relevant times. *Id.* ¶ 8. On February 7, 2014, Plaintiff and four others filed a complaint against Defendants, alleging multiple violations of state and federal law. ECF No. 1. On September 9, 2016, the parties agreed to dismiss the case without prejudice, pending the outcome of parallel criminal proceedings. ECF No. 66. On September 7, 2017, Plaintiff refiled his complaint ("Complaint") with an amendment. The other four plaintiffs filed a new complaint under a separate docket number. *See* 2d Compl. ¶ 2. All Defendants except for Aviles have answered Plaintiff's Complaint in lieu of filing motions to dismiss. *See* ECF Nos. 70 & 72.

The Complaint alleges the following facts. In 2011, the PBA began investigating the titles of top administrators at the DOC and their entitlement to remain in the PBA's pension system, including Defendants Eady and Aviles. *See* 2d Compl. ¶ 21. The investigation uncovered that Defendants Eady and Aviles, among others, held civilian titles but remained in the pension system. *Id.* ¶ 22. Subsequently, Plaintiff and others began receiving threatening phone calls from Eady. *Id.* ¶ 25. The PBA filed a formal grievance with Director Aviles in March 2012, in which it outlined multiple retaliatory measures undertaken by Eady. *Id.* ¶¶ 27–30. The PBA sent a follow-up letter to Aviles shortly thereafter seeking immediate intervention but none of its correspondence resulted in corrective action by the DOC. *Id.* ¶ 31.

Later that month, Aviles changed the DOC's disciplinary policy to enable Eady to issue disciplinary charges and impose discipline against DOC employees. *Id.* ¶ 36. In May 2012, Plaintiff learned that Eady planned to retaliate further against him, which caused him to fear for his career. *Id.* ¶¶ 37–38. Director Aviles again learned of threats made by Eady to Plaintiff and others and he again did nothing. *See id.* ¶¶ 41–42. In June 2012, a confidential informant working with the FBI and close friend of Eady's (the "Informant") informed Plaintiff that Eady had been recording phone conversations between Plaintiff and other PBA officials, at which point Plaintiff notified the FBI. *Id.* ¶¶ 47–52. The Informant advised Plaintiff of other threats made by Eady against Plaintiff and others. *Id.* ¶¶ 53–60. Eady undertook other retaliatory measures against Plaintiff for reporting an incident of sexual harassment to Internal Affairs that involved Eady's friend. *Id.* ¶¶ 63–76.

On October 19, 2012, Plaintiff suffered an anxiety attack and was put on medical leave because of the stress caused by Eady's retaliation. *Id.* ¶ 77. Plaintiff did not return to work until the end of February 2013. *Id.* ¶ 80. On January 14, 2014, Eady was arrested on one count of illegal wiretapping. *Id.* ¶ 85. Plaintiff alleges that Eady used a website called "Evil Operator" to record his phone conversations while he was President of the PBA, in an effort to obtain an unfair advantage and to learn privileged, sensitive and confidential information about officer discipline and union contract negotiations, among other things. *See id.* ¶¶ 92–100.

Plaintiff's Second Amended Complaint asserts 13 causes of action:

(1) <u>Count 1:</u> unlawful interception of Plaintiff's wire communication under 18 U.S.C. § 2511(1)(a), *see id.* ¶¶ 108–11;

(2) Count 2: unlawful disclosure and use of Plaintiff's wire communication under 18 U.S.C. §§ 2511(c) and (d), *see id*. ¶¶ 112–15;

(3) Count 3: violation of the New Jersey wiretapping statute, N.J.S.A. 2A:156-1, *see id*. ¶¶ 116–19;

(4) Count 4: invasion of privacy by intrusion upon seclusion, *see id*. ¶¶ 120–25;

(5) Count 5: violation of Plaintiff's privacy rights under 42 U.S.C. § 1983, N.J.S.A. 10:6-1, the Fourth Amendment of the U.S. Constitution, and Article I, Paragraph 1 of the N.J. Constitution, *see id*. ¶¶ 126–38;

(6) Count 6: violation of Plaintiff's free speech and association rights under 42 U.S.C. § 1983, N.J.S.A. 10:6-1, the First Amendment of the U.S. Constitution, and Article I, Paragraph 6 of the N.J. Constitution, *see id*. ¶¶ 139–48;

(7) Count 7: violation of state and federal wiretap law under 18 U.S.C. § 2511(1)(a) and N.J.S.A. 2A:156-1, *see id*. ¶¶ 149–57;

(8) Count 8: violation of Plaintiff's union rights under N.J.S.A. 10:6-1 *et seq*. and Article I, Paragraphs 18–19 of the N.J. Constitution, *see id*. ¶¶ 158–68;

(9) Count 9: violation of N.J. Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *see id*. ¶¶ 169–78;

(10) Count 10: retaliation under the N.J. Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *see id*. ¶¶ 179–85;

(11) Count 11: negligent infliction of emotional distress, *see id*. ¶¶ 186–88;

(12) Count 12: intentional infliction of emotional distress, *see id*. ¶¶ 189–94;

(13) Count 13: negligent promotion and failure to properly train and/or supervise, *see id*. ¶¶ 195–201.

Defendant Aviles now moves individually to dismiss all counts, arguing first that Plaintiff's claims brought against Hudson County and against Aviles in his official capacity are duplicative. *See* Br. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br.") 3–4, ECF No. 73-2. Second, Aviles argues that Plaintiff's tort claims are barred because Plaintiff failed to file a tort claim notice pursuant to the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:8-8. *See id*. at 4–6. Third, Aviles submits that Plaintiff's CEPA claim is time barred under the one-year statute of limitations. *See id*. at 6–7. Fourth, Aviles argues that Plaintiff's claims under the NJLAD are impermissibly vague. *See id*. at 7–9. Finally, Aviles asserts that all remaining claims in the Complaint are impermissible "group pleadings" that fail to specify which causes of action are attributable to each of the Defendants. *See id*. at 9–11.

Plaintiff opposes, arguing first that his Complaint contains sufficient facts that satisfy the Rule 12(b)(6) standard for all of the alleged claims. *See* Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") 1–3, ECF No. 76. Second, Plaintiff submits that he

did in fact file a notice of tort claim as required by law, contrary to Aviles' erroneous assertion. *See id.* at 3–4. Third, Plaintiff asserts that he timely filed his CEPA claim because this claim relates back to his original filing pursuant to Federal Rule of Civil Procedure 15 and because the "trigger date" of his claim was January 2015, which falls within one year from when he filed his amended complaint. *See id.* at 5–8. Finally, Plaintiff argues that the Complaint properly names Aviles in reference to specific alleged facts that give rise to the claims against him in both his official and individual capacities and his "group pleadings" theory is meritless. *See id.* at 8–13. Aviles did not file a reply.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

## III. DISCUSSION

The Court addresses each of Defendant Aviles' arguments in the order in which he presented them. Aviles correctly states that claims brought against a municipality and an officer of that same municipality are technically duplicative. "Personal-capacity damage suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). "'As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "It follows therefore that the claims here,

4

insofar as they are against defendant officials in their official capacities, are only a duplication of the counts asserted against the Township itself." *Id.* Consequently, all claims against Aviles in his official capacity are essentially claims against Defendant Hudson County, which has received proper notice and timely answered the Complaint. Aviles, however, remains liable for these same claims in his personal capacity and thus his first argument results in a distinction without much of a difference. *See Hafer v. Melo*, 502 U.S. 21, 28–29 (1991) ("State executive officials are not entitled to absolute immunity for their official actions."). Nonetheless, all claims against Aviles in his official capacity are **DISMISSED WITH PREJUDICE**.

The Court next finds that Aviles' erroneously argues that Plaintiff failed to file a tort claim notice. Attached to his opposition, Plaintiff submitted a letter sent from Plaintiff's counsel to the County's counsel on August 15, 2012. Pl.'s Opp'n, Ex. A. The letter outlines Plaintiff's intent to sue the DOC. Aviles did not file a reply contesting the letter's authenticity. The Court, therefore, assumes its authenticity and **DENIES** Aviles' motion with respect to Plaintiff's tort claims.

With respect to Plaintiff's CEPA claim, the Court agrees with Plaintiff that his claim relates back to his original filing pursuant to Rule 15(c)(1)(B). Plaintiff's initial complaint alleges all of the same facts related to Eady's retaliatory actions and Aviles' inaction that Plaintiff describes in his second amended complaint. *See* ECF No. 1. The Court, therefore, finds that Plaintiff's CEPA claim relates back to his original filing under Rule 15 and Aviles' motion with respect thereto is **DENIED**.[1]

Finally, the Court also agrees with Plaintiff that Aviles' arguments concerning the NJLAD claim and Plaintiff's "group pleadings" are unavailing. First, Plaintiff alleges several facts sufficient to support aiding and abetting liability under the NJLAD. The Complaint alleges that Aviles learned of Eady's misconduct on multiple occasions and failed to take any disciplinary action. It also alleges that Aviles altered the disciplinary rules to allow Eady to impose discipline in his capacity as Deputy Director. *See* 2d Compl. ¶¶ 27–42. The fact that Plaintiff does not recite the phrase "aiding and abetting" in the Complaint does not make the alleged facts any less applicable to Aviles' potential liability under the NJLAD. Second, there is nothing vague about Plaintiff's claims and the Court flatly rejects Aviles' "group pleadings" argument as baseless. Aviles appears in Plaintiff's factual narrative in very specific instances during which he allegedly failed to take appropriate action and, in one instance, empowered Eady with the ability to exact his own disciplinary measures. Aviles' misconduct is plainly alleged. The Court, therefore, **DENIES** Aviles' motion with respect to his vagueness argument.

---

[1] The Court need not address the parties' arguments with respect to the appropriate "trigger date" of the CEPA claim.

## IV. CONCLUSION

For the reasons stated above, Defendant Aviles' motion to dismiss is **GRANTED in part** and **DENIED in part**. The Court **GRANTS** Aviles' motion with respect to the claims against him in his official capacity and those are **DISMISSED WITH PREJUDICE**. The Court **DENIES** Aviles' motion with respect to all remaining claims.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 5, 2018**