UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LUIS OCASIO,

    Plaintiff,

v.

COUNTY OF HUDSON; HUDSON COUNTY DEPARTMENT OF CORRECTIONS; KIRK EADY, individually and in his official capacity as Deputy Director of Hudson County Department of Corrections; OSCAR AVILES individually,

    Defendants.

Civ. No. 2:14-cv-00811 (WJM)

OPINION

**WILLIAM J. MARTINI, U.S.D.J.:**

    Plaintiff Luis Ocasio brings this action against Hudson County (the "County"), its Department of Corrections ("DOC"), Kirk Eady, and Oscar Aviles. Before the Court are four motions for summary judgment:

1. Plaintiff Luis Ocasio's Motion for Partial Summary Judgment, ECF No. 115;
2. Defendants County of Hudson, the Hudson County Department of Corrections, Oscar Aviles, Thomas DeGise, and Trish Nalls-Castillo's[1] Motion for Partial Summary Judgment, ECF No. 120 (collectively, the "Hudson County Defendants");
3. Defendant Oscar Aviles's Motion for Summary Judgment, ECF No. 121; and
4. Defendant Kirk Eady's Motion for Summary Judgment, ECF No. 122.

    There was no oral argument. Fed. R. Civ. P. 78(b). Respectively, for the reasons stated below: (1) Plaintiff's motion is **DENIED**; (2) Defendants' motion is **GRANTED IN PART and DENIED IN PART**; (3) Defendant's motion is **GRANTED IN PART and DENIED IN PART**; and (4) Defendant's Motion is **GRANTED IN PART and DENIED IN PART**.

---

[1] As stated below, Defendants Trish Nalls-Castillo or Thomas A. DeGise are dismissed from this matter per agreement of the parties.

I. **BACKGROUND**[2]

Plaintiff worked at the Hudson County DOC as a Corrections Officer and served as President of the Policemen's Benevolent Association ("PBA") Local #109, the union and collective bargaining unit for officers for the Hudson County DOC, from 2010 until 2014. Second Am. Compl. ¶ 3, ECF No. 68. Defendant Oscar Aviles worked as the Director of the DOC from March 2004 until July 2015. *Id.* ¶ 8. Defendant Kirk Eady was the Deputy Director of the Hudson County DOC and served under Aviles during the time period relevant to this case. One of Eady's responsibilities as Deputy Director was managing relations with the union.

On February 7, 2014, Plaintiff and four others filed a complaint against Defendants, alleging multiple violations of state and federal law. ECF No. 1. On September 9, 2016, the parties agreed to dismiss the case without prejudice, pending the outcome of parallel criminal proceedings. ECF No. 66. On September 7, 2017, Plaintiff re-filed his complaint ("Complaint") with an amendment. The other four plaintiffs filed a new complaint under a separate docket number. *See* Second Am. Compl. ¶ 2.

In 2011, the PBA began investigating the titles of top administrators at the DOC and their entitlement to remain in the PBA's pension system, including Defendants Eady and Aviles. *See* Second Am. Compl. ¶ 21. The investigation uncovered that Defendants Eady and Aviles, among others, held civilian titles but remained in the pension system. *Id.* ¶ 22. Subsequently, Plaintiff Ocasio and others began receiving threatening phone calls from Eady. *Id.* ¶ 25. The PBA filed a formal grievance with Director Aviles in March 2012, in which it outlined multiple retaliatory measures undertaken by Eady. *Id.* ¶¶ 27–30. The PBA sent a follow-up letter to Aviles shortly thereafter seeking immediate intervention but none of its correspondence resulted in corrective action by the DOC. *Id.* ¶ 31

Later that month, Aviles changed the DOC's disciplinary policy to enable Eady to issue disciplinary charges and impose discipline against DOC employees. *Id.* ¶ 36. In May 2012, Plaintiff Ocasio learned that Eady planned to retaliate further against him, which caused him to fear for his career. *Id.* ¶¶ 37–38. Director Aviles again learned of threats made by Eady to Plaintiff and others and he again did nothing. *See id.* ¶¶ 41–42. In June 2012, a confidential informant working with the FBI and close friend of Eady's, Latanya Freeman, informed Plaintiff that Eady had been recording phone conversations between Plaintiff and other PBA officials, at which point Plaintiff notified the FBI. *Id.* ¶¶ 47–52, ECF No. 115-16 at 211. The Informant advised Plaintiff of other threats made by Eady against Plaintiff and others. *Id.* ¶¶ 53–60. Eady undertook other retaliatory measures against Plaintiff for reporting an incident of sexual harassment to Internal Affairs that involved Eady's friend. *Id.* ¶¶ 63–76. On July 19, 2012, Kirk Eady issued a

---

[2] The facts alleged in the Amended Complaint, ECF No. 80 ("AC"), are accepted as true for the purposes of this Opinion. The Court also considers matters of public record and documents incorporated into the AC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

memo to Plaintiff as the PBA President abolishing union release time and requiring him to report for a shirt in uniform five days per week. On August 15, 2012, Plaintiff's counsel filed a Notice of Claim that described Eady's alleged wiretapping scheme with the Hudson County Counsel.

On October 19, 2012, Plaintiff suffered an anxiety attack and was put on medical leave because of the stress caused by Eady's retaliation. *Id.* ¶ 77. Plaintiff did not return to work until the end of February 2013. *Id.* ¶ 80. On March 20, 2013, the FBI executed a search warrant upon Eady and seized his computer from his office. On January 14, 2014, Eady was arrested on one count of illegal wiretapping. *Id.* ¶ 85. Eady was terminated from his employment with the County after his conviction in March 2015 for illegal wiretapping. Plaintiff alleges that Eady used a website called "Evil Operator" to record his phone conversations while he was President of the PBA, in an effort to obtain an unfair advantage and to learn privileged, sensitive and confidential information about officer discipline and union contract negotiations, among other things. *See id.* ¶¶ 92–100.

Plaintiff asserted thirteen causes of action in his Second Amended Complaint, eight of which now remain:

- Count 1: unlawful interception of Plaintiff's wire communication under 18 U.S.C. § 2511(1)(a), *see id.* ¶¶ 108–11;
- Count 2: unlawful disclosure and use of Plaintiff's wire communication under 18 U.S.C. §§ 2511(c) and (d), *see id.* ¶¶ 112–15;
- Count 3: violation of the New Jersey wiretapping statute, N.J.S.A. 2A:156-1, *see id.* ¶¶ 116–19;
- Count 5: violation of Plaintiff's privacy rights under 42 U.S.C. § 1983, N.J.S.A. 10:6-1, the Fourth Amendment of the U.S. Constitution, and Article I, Paragraph 1 of the N.J. Constitution, *see id.* ¶¶ 126–38;
- Count 6: violation of Plaintiff's free speech and association rights under 42 U.S.C. § 1983, N.J.S.A. 10:6-1, the First Amendment of the U.S. Constitution, and Article I, Paragraph 6 of the N.J. Constitution, *see id.* ¶¶ 139–48;
- Count 7: violation of state and federal wiretap law under 18 U.S.C. § 2511(1)(a) and N.J.S.A. 2A:156-1, and consequently, 42 U.S.C. § 1983. *see id.* ¶¶ 149–57;
- Count 8: violation of Plaintiff's union rights under N.J.S.A. 10:6-1 *et seq.* and Article I, Paragraphs 18–19 of the N.J. Constitution, *see id.* ¶¶ 158–68;
- Count 10: retaliation under the N.J. Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *see id.* ¶¶ 179–85;

Plaintiff moves for partial summary judgment as to Counts Five, Six, Seven, and Eight of Plaintiff's Second Amended Complaint. ECF No. 115-2 at 1-2. Defendants County of Hudson, the Hudson County Department of Corrections, Oscar Aviles, Thomas DeGise, and Trish Nalls-Castillo move for summary judgment as to Counts One, Two, Three, Four, Five, Six, Seven, Eight, Ten, Eleven, Twelve, and Thirteen. *See* ECF No. 120 at 4-28. Defendant Oscar Aviles moves for summary judgment as to all counts. ECF No. 121-2 at 9-40. Defendant Kirk Eady moves for summary judgment as to all

counts. ECF No. 122 at 39. Because Plaintiff indicated in his opposition that he does not oppose Defendants' summary judgment motions as to Counts Four, Eleven, Twelve, and Thirteen, or to dismissing Defendants Nalls-Castillo or. DeGise, Defendants' motions are **GRANTED** as to those Counts.[3]

## II. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* To make this determination, the Court views the facts in the light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *Scott v. Harris*, 550 U.S. 372, (2007); *Green v. New Jersey State Police*, 246 F. App'x 158, 159 (3d Cir. 2007).

The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)).

## III. DISCUSSION

The Court examines all four motions for summary judgment by general subject matter of Plaintiff's claims.

### A. Counts One, Two, Three and Seven: Claims Relating to Intercepted Wire Communications

All Defendants move for summary judgment under Counts One, Two, and Three, which assert unlawful interception and disclosure of Plaintiff's wire communication under federal law, and violation of the New Jersey wiretapping statute. The Hudson County Defendants, Defendant Aviles, and Defendant Eady argue that they are entitled to summary judgment as to these claims because: (1) there is no evidence that Eady ever recorded Plaintiff; (2) in his Second Amended Complaint, Plaintiff only mentions Defendant Eady in these counts and Plaintiff has not sufficiently implicated any other Defendants in Eady's alleged wiretapping. ECF No. 120-1 at 5, ECF No. 121-2 at 9-11, ECF No. 122 at 9-11.

> *1. Whether There Is a Genuine Issue of Fact as to Whether Eady Illicitly Recorded Plaintiff*

---

[3]   Count Nine was previously dismissed. ECF No. 112.

Defendants argue that there is no question of fact as to whether Eady illegally intercepted Plaintiff's phone calls because: (1) Plaintiff testified at Defendant Eady's criminal trial that he had not heard his voice on any recording made by Eady; (2) Defendant Eady testified that he never recorded a call made by Plaintiff at his deposition; (3) although Plaintiff possesses all of the calls recorded by Eady, Plaintiff has not identified his voice on any of those calls; and (4) evidence supporting that Plaintiff was recorded by Eady is inadmissible hearsay.

To support his claim that a genuine issue of fact exists as to whether Eady illegally recorded Plaintiff, Plaintiff, among other things, cites testimony from Confidential Informant Latanya Freeman during the criminal trial of Eady during which Freeman stated that in 2012, Eady told her that he was recording phone calls to which Plaintiff was a party, that Eady played those calls for Freeman, and that Freeman recognized Plaintiff's voice. ECF No. 129-1 at 3-4. Viewing the facts in the light most favorable to Plaintiff, this nonhearsay evidence[4] is sufficient to create a genuine issue of fact as to whether Eady recorded Plaintiff in violation of the state and federal wiretapping statutes.

### 2. Whether the Hudson County Defendants Can Be Held Liable Under the Wiretapping Statutes

Defendant argues that the County of Hudson, its Department of Corrections and Defendant Aviles are liable under the wiretapping statutes because "Defendants did nothing to stop [Eady's illegal wiretapping] from August 2012 until January 2014 despite having unequivocal notice of it by way of Plaintiff's notice of claim and execution of the FBI's search warrant." ECF No. 129 at 12.

18 U.S.C. § 2520 provides, in relevant part: "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate." Section 2511(1)(a) declares it unlawful for any person "intentionally [to] intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."[5] Plaintiff Ocasio alleges that Defendant Eady, *but not* the County of Hudson, its Department of Corrections, or Defendant Aviles, unlawfully intercepted,

---

[4] Plaintiff cites to the criminal trial transcript, Plaintiff's Exhibit 79, ECF No. 129-3, 132-3. Plaintiff also cites to Ocasio's deposition testimony wherein he recounts his conversation with Freeman during which she describes her conversations with Eady. This is hearsay evidence. However, "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e. 'in a form that would be admissible at trial." *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 466 (3d Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Consequently, the Court will consider evidence of Freeman's conversations with Eady.

[5] N.J. Stat. §§ 2A:156A-3 and 156A-24 similarly imposes liability upon those who "Purposely intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any wire, electric or oral communication."

5

disclosed, or misused his telephone conversations. *See Falk v. Cty. of Suffolk*, 781 F. Supp. 146, 150 (E.D.N.Y. 1991). Because Plaintiff asserts a theory of liability not cognizable under the wiretap statutes, Defendants are entitled to judgment as a matter of law. The Court **GRANTS** summary judgment as to Counts One, Two, and Three in favor the County of Hudson, the Hudson County Department of Corrections, and Defendant Aviles. The Court **DENIES** summary judgment to Defendant Eady as to these counts.

### 3. Plaintiffs Section 1983 Claim for Violation of the Wiretapping Statutes

Plaintiff and all Defendants move for summary judgment as to Count Seven, in which Plaintiff alleges that Defendants' are liable under 42 U.S.C. § 1983 through violations of 18 U.S.C. § 2511(1)(a) and N.J.S.A. 2A:156-1. *See* Amended Compl. at ¶¶ 150, 151. As an initial matter, Plaintiff cannot assert a state statute as a basis for recovery under § 1983. *See Brown v. Grabowski*, 922 F.2d 1097 (1990) ("Section 1983 does not provide a cause of action for violations of state statutes . . ."). Insofar as Plaintiff premises his § 1983 claim on the New Jersey wiretapping statute, summary judgment is **GRANTED** in favor of all Defendants on Count Seven. For the reasons stated above, Defendants County of Hudson, the Department of Corrections, and Oscar Aviles cannot be held liable under § 1983 for violation of 18 U.S.C. §§ 2511(1)(a) or 2520. Consequently, summary judgment is **GRANTED** as to those Defendants on Count Seven in full. Plaintiff's assertion of evidence sufficient to preclude summary judgment in favor of Defendant Eady on Counts One, Two, and Three, precludes summary judgment as to Count Seven. As noted above, Defendant Eady argues that: (1) Plaintiff testified that he had not heard his voice on any recording made by Eady, ECF No. 129-5 at 196; (2) Defendant Eady testified that he never recorded a call made by Plaintiff at his deposition, ECF No. 115-15 at 30; and (3) although Plaintiff possesses all of the calls recorded by Eady, Plaintiff has not identified his voice on any of those calls. These facts create a genuine issue of material fact as to whether Plaintiff Ocasio was recorded by Defendant Eady in violation of the federal and state wiretapping statutes. The Court **DENIES** Plaintiff Ocasio's and Defendant Eady's motions for summary judgment as to Count Seven.

### B. Count Five: Claims Related to Privacy Rights

Plaintiff Ocasio contends that the alleged interception of his phone calls violated his Fourth Amendment rights, giving rise to a cause of action under § 1983. Section 1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage...subjects, or causes to be subjected, any citizen ...or any other person...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, will be liable to the party injured." 42 U.S.C. § 1983.

Defendant Eady argues that he did not act under color of state law when he allegedly recorded Plaintiff's conversations. Plaintiff states that "[a] person acts under color of state law if he or she had some measure of control or authority over the Plaintiff." ECF No. 129 at 12-13. This is an incomplete. "Action under color of state

6

law requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dep't.*, 635 F.3d 606, 609 (3d Cir. 2011) (internal quotation omitted). "Whether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir.). The Court agrees that, as to the Fourth Amendment privacy claim against Defendant Eady only, Eady did not act "under color of state law." Unlike those cases where off duty state officers arrest individuals, identify themselves as police officers, utilize police cars, utilize state issued weapons, or otherwise use the means uniquely inherent to the authority vested in them to violate individuals' civil rights, here, Defendant Eady is alleged to have used a private website called "Evil Operator" to record Ocasio's phone conversations from his private phone. Plaintiff concedes these facts. *See* ECF No. 115-3 at 16. The Court finds that there is an insufficient nexus between Eady's alleged wrongdoing and the performance of his official duties. The Court therefore **GRANTS** all Defendants' motions for summary judgment and **DENIES** Plaintiff's motion for summary judgment as to Count Five.[6]

### C. Counts Six and Eight: Claims Related to First Amendment Freedom of Speech, Rights to Associate, and Rights to Unionize

In Counts Six and Eight, Plaintiff contends that Defendants' actions surrounding, but different from, Defendant Eady's alleged phone recordings violated his First Amendment Free Speech rights, his First Amendment Freedom of Association rights, and state law rights to unionize, giving rise to a cause of action under § 1983. These claims are premised on the contention that Defendants retaliated against him because of his association with the union and his role as its president. All of the remaining parties to this case request that the Court grant summary judgment as to these claims in their favor. The Court declines to do so.

#### 1. Whether Defendant Eady Acted Under Color of State Law

Defendant Eady reasserts his argument that he did not act under color of state law. In the context of Plaintiff's retaliatory association allegations, the Court rejects that the notion that Eady did not utilize his authority as a state official. As Deputy Director, Eady's responsibilities included manage relations with the union, overseeing the disciplinary process for corrections officers within the facility, and representing management during negotiations with the union. Plaintiff's allegations that Defendant Eady took specific actions pursuant to his responsibilities to retaliate against him require this Court to find that Eady qualifies as one acting under state law pursuant to § 1983.

---

[6] Because the Court concludes that Defendant Eady's conduct alleged to violate Plaintiff's Fourth Amendment rights did not occur under color of state law, it consequently does not "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body' officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

### 2. *Whether a Genuine Issue of Material Facts Exists as to Plaintiff's Free Speech and Freedom of Association Retaliatory Claims*

The First Amendment's freedom of association clause protects the rights of associations such as unions to advocate on behalf of their members.[7] *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 464 (1979). As such, the government is prohibited from "imposing sanctions for the expression of particular views it opposes." *Id.* at 465. To prevail on a § 1983 First Amendment retaliation claim, the plaintiff must prove that (1) he engaged in "constitutionally protected conduct," (2) the defendant engaged in "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and (3) "a causal link [existed] between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted). The Third Circuit recently determined that membership in a union is *per se* protected conduct for the purposes of Plaintiff's First Amendment retaliation claim. *See Palardy v. Township of Milburn*, 906 F.3d 76 (2018) ("[Plaintiff's] union membership is worthy of constitutional protection."). "[A]ny retaliatory conduct sufficient to deter a person of ordinary firmness from exercising his First Amendment rights is actionable under § 1983. *Suppan v. Dadonna*, 203 F. 3d 228, 235 (3d Cir. 2000) (internal quotations omitted).

Plaintiff proffers substantial evidence that Defendant Eady's actions were meant to retaliate against Plaintiff because of his affiliation with the union, including, among others: (1) Eady's phone call from August 3, 2012 with the FBI's confidential informant about bankrupting the union by way of a frivolous lawsuit; (2) evidence suggesting that Eady's revocation of Plaintiff full union release time was to interfere with his ability to advocate for the union; (3) requiring Plaintiff to seek approval from Eady to conduct any union activity; and (4) Eady's suggestion that Plaintiff be disciplined for participating in an interview published in a corrections publication. In support of its own summary judgment motion, Defendants proffer their own evidence, including, among others: (1) evidence that the abolition of full union release time was a policy decision reached after the issuance of a report from the Commission of Investigation finding it costly; (2) evidence that Ocasio was not promoted as a result because of lack-of-merit; and (3) evidence that Plaintiff was not docked pay for attending union meetings.

Viewing these facts in the light most favorable to the Defendants in assessing Plaintiff's motion, and separately viewing these facts most favorably to Plaintiff in assessing Defendants' motions, the Court finds that genuine issues of material fact preclude summary judgment in favor of any parties.

---

[7] This Court's analysis of the New Jersey Constitution's Free Speech Clause is identical to its analysis of federal First Amendment rights. *Palardy v. Twp. Of Millburn*, 906 F.3d 76, 80 (3d Cir. 2018) (The New Jersey Constitution's Free Speech Clause at Article I, Paragraph 6 is "generally interpreted as co-extensive with the First Amendment.").

8

### 3. *Whether the Hudson County Defendants Can Be Held Liable Pursuant to Monell*

Plaintiff seeks to premise liability as to Defendants Aviles, the County of Hudson, the Department of Corrections on the grounds that Eady's conduct implements an official policy or custom. *Monell*, 436 U.S. at 690. An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; (2) the individual himself has final policy-making authority such that his conduct represents official policy; or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, *or by ratifying the conduct or speech after it has occurred*. *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006). The parties agree that Defendant Aviles is the individual with final policy-making authority for the purposes of the County Defendants' *Monell* liability in this matter. ECF No. 96.

Plaintiff mainly seek to prove the existence of a policy or custom by showing that the policymaking official, Aviles, was aware of a subordinate's unconstitutional actions, here, Eady's, and consciously chose to ignore them, effectively ratifying the actions. *See, e.g., Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992) (stating that municipal liability lies where the subordinate's misconduct is "so manifest as to imply the constructive acquiescence of senior policy-making officials"). Plaintiff asserts substantial evidence that is consistent with his theory that after Ocasio's claim notice in August 2012 and the FBI search warrant in 2013, "Aviles took no action against Eady, allowed him to remain engaged in union-related issues on behalf of management, including on several occasions forwarding emails to Eady to ensure that he was still in the loop, and lied about Eady still being directly involved with PBA 109." ECF No. 115-3 at 19-20. Defendant Aviles denies that he took no action with regard to Eady's allegedly unconstitutional actions and cites to, among other things, four attempts by Hudson County to retrieve additional information regarding Plaintiff's August 2012 Claims Notice. ECF 127 at 8. Genuine issues of material fact preclude summary judgment in favor of any of the parties as to the Plaintiff's *Monell* claim.

### 4. *Whether Defendant Aviles is Entitled to Qualified Immunity*

Defendant Aviles argues that he is entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* For the reasons stated above,

9

there is a genuine issue of material fact as to whether Plaintiff's constitutional rights were violated.

For the above stated reasons, all parties' motions for summary judgment as to Counts Six and Eight are **DENIED.**

### D. Count Ten: Claims Related to Employment Rights

In Count Ten, Plaintiff alleges retaliation in violation of the New Jersey Law Against Discrimination, ("LAD") N.J.S.A. 10:5-12. All Defendants move for summary judgment as to Count Ten. To establish a LAD claim, plaintiff must demonstrate that: (1) he engaged in a protected activity known by the county; (2) he suffered an adverse employment action; and (3) his participation in the protected activity caused the retaliation. *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623, 629-30 (1995). Plaintiff argues that he made a complaint on behalf of a female corrections officer of sexual harassment against her by a superior officer, and thereafter suffered retaliation. In order to make a retaliation claim under the LAD, a plaintiff must establish that a prohibited criteria "played a role in the decision making process and that it had a determinative influence on the outcome of the process." *Greenberg v. Camden Cty. Vocation and Tech. Schools*, 310 N.J. Super. 189, 198 (App. Div. 1998). The Court concludes that Plaintiff has raised insufficient evidence to show that Plaintiff's complaint had a determinative influence in the outcome of a decisionmaking process. Specifically, Plaintiff cites to his complaint raising the sexual harassment complaint but points to no other evidence showing that the complaint played any specific role in a decisionmkaing process. *See* ECF No. 129 at 19-20. Defendants' meets their burden on summary judgment by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial, and the Plaintiff fails to set forth any specific facts showing that there is a genuine issue for trial. Defendants' motions are **GRANTED** as to Count ten.

### IV.   CONCLUSION

For the reasons set forth above: Summary judgment is **GRANTED** as to Counts One, Two, and Three in favor the County of Hudson, the Hudson County Department of Corrections, and Defendant Aviles, and summary judgment is **DENIED** as to Defendant Eady as to these counts; summary judgment is **GRANTED** as to Count Five in favor of all Defendants and **DENIED** as to Plaintiff; summary judgment is **GRANTED** as to Count Seven as to Defendants County of Hudson, the Department of Corrections, and Oscar Aviles and **DENIED** as to Plaintiff and Defendant Eady; summary judgment is **GRANTED** in favor of all Defendants as to Count Ten; summary judgment is **DENIED** as to the remainder of claims. An appropriate order follows.

/s/ William J. Martini
WILLIAM J. MARTINI, U.S.D.J.

5/26/20

10