UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LUIS OCASIO,<br><br>                **Plaintiff,**<br><br>v.<br><br>COUNTY OF HUDSON; HUDSON COUNTY DEPARTMENT OF CORRECTIONS; KIRK EADY, *individually and in his official capacity as Deputy Director of Hudson County Department of Corrections*; OSCAR AVILES *individually*,<br><br>                **Defendants.** | Civ. No. 2:14-CV-811 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Currently before the Court is Plaintiff Luis Ocasio's Motion for a New Trial or to Alter/Amend the Judgment pursuant to Federal Rule of Civil Procedure 59, or in the alternative, for Relief from a Judgment or Order pursuant to Rule 60 ("Motion"). ECF No. 226.[1] This opinion is issued without oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions and for the reasons set forth below, Plaintiff's Motion is **DENIED**.

I.     **RELEVANT BACKGROUND**

Plaintiff worked as a corrections officer at the Hudson County Department of Corrections ("DOC") from 2000 to 2014 and served as President of the Policemen's Benevolent Association ("PBA") Local #109, the corrections officers' union, from 2010 to 2014. Defendant Oscar Aviles ("Aviles") worked as the Director of the Hudson County DOC from 2004 to 2015. Defendant Kirk Eady ("Eady") was the Deputy Director of the Hudson County DOC from 2010 to 2014 and served under Aviles during the period

---

[1] Also pending before this Court is Plaintiff's Motion for Attorneys' Fees and Costs as a Prevailing Plaintiff, ECF No. 229, and Plaintiff's Motion to Mold the Verdict to Account for the Adverse Tax Consequences of a Lump Sum Award, ECF No. 231. These motions will be addressed in a separate opinion.

1

relevant to this case. As Deputy Director, Eady was responsible for the day-to-day staffing of the jail and for managing relations with the union.

In February 2014, Plaintiff and four others filed a complaint against Hudson County, the Hudson County DOC (together, the "County Defendants"), and several Hudson County DOC employees, including Eady and Aviles. ECF No. 1. The complaint alleged numerous violations of state and federal law. In September 2016, the parties agreed to dismiss the case without prejudice. ECF No. 66.

In September 2017, Plaintiff amended and re-filed his complaint as the sole plaintiff, asserting thirteen causes of action. ECF No. 68. After discovery and motion practice, the only claims remaining were four state and federal wiretapping claims against Eady and two claims alleging the violation of Plaintiff's free speech, association, and union rights under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.*, against the County Defendants, Aviles, and Eady. On January 23, 2023, trial commenced on Plaintiff's remaining claims.[2]

At trial, Plaintiff argued that Eady retaliated against Plaintiff based upon his status as President of the PBA Local #109, causing Plaintiff to be constructively discharged from his position. Specifically, Plaintiff asserted that Eady, among other things, denied Plaintiff's requests for leave to attend to union business, threatened Plaintiff by way of anonymous phone calls, and intercepted Plaintiff's phone calls using a phone application called "Evil Operator."[3] Plaintiff also introduced evidence in order to argue that Aviles and the County Defendants failed to sufficiently address Eady's conduct, rendering them liable for Eady's retaliatory acts under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). However, after the close of evidence, Defendants moved for judgment as a matter of law pursuant to Rule 50(a). After extensive oral argument, the Court granted the motions as to Aviles and the County Defendants but denied the motion as to Eady. ECF No. 217; Tr. Vol. 6, 988:4. The trial commenced with Eady as the sole defendant, and on February 1, 2023, the jury found judgment in favor of Plaintiff on all counts. Plaintiff was awarded a total of $662,000.00 in back pay, future pay, and economic damages. ECF Nos. 223-24.

On February 20, 2023, Plaintiff filed the instant Motion, arguing that the Court erred in entering judgment as a matter of law in favor of Aviles and the County Defendants. Mov. Br. 2, ECF No. 226-2. The County Defendants filed an Opposition Brief on March 2, 2023,

---

[2] After the close of evidence, Plaintiff declined to pursue his state and federal wiretapping claims. Tr. Vol. 6, 993:19-21.

[3] The FBI executed a search warrant upon Eady's home and office in March 2013. Tr. Vol. 4, 631:2-5. Eady was ultimately convicted of one count of illegal wiretapping. Tr. Vol. 4, 693:4-8. Plaintiff submitted as evidence in this case recordings of phone calls that Eady had with a confidential informant who was working with the FBI before the execution of the search warrant. The informant, Latanya Freeman, worked as a corrections officer at the Hudson County DOC. Tr. Vol. 4, 642:13-18.

2

ECF No. 232. Aviles filed an Opposition Brief the next day, ECF No. 234. Plaintiff filed a Reply Brief on March 9, 2023, ECF. 238.[4]

## II. STANDARD OF REVIEW

Plaintiff's Motion refers to Rule 59(a), Rule 59(e), Rule 60(b)(1), and Rule 60(b)(6) of the Federal Rules of Civil Procedure. Mov. Br. 2.

A court may grant a new trial under Rule 59(a) "for any reason for which a new trial has heretofore been granted in an action at law in federal court," but "it should do so only when the great weight of the evidence cuts against the verdict and a miscarriage of justice would result if the verdict were to stand[.]" *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (alterations, citations, and internal quotation marks omitted).

A judgment may also be "altered or amended" pursuant to Rule 59(e) if the movant "seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the [Rule 50(a)] motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citation, internal quotation marks, and emphasis omitted). The scope of a Rule 59(e) motion is "extremely limited" and "[s]uch motions are not to be used as an opportunity to relitigate the case[.]" *Barrett Fin. of N. Jersey, LLC v. Creative Fin. Grp. of New Jersey*, No. CV 13-5621, 2019 WL 2067552, at *5 (D.N.J. May 10, 2019) (internal quotation marks omitted) (quoting *Blystone*, 664 F.3d at 415).

Rule 60(b) lists circumstances under which a court may grant relief from a final judgment. "Under Rule 60(b)(1), a court may grant relief on the basis of 'mistake, inadvertence, surprise, or excusable neglect.'" *Singleton v. Beadle*, 839 F. App'x 671, 673 (3d Cir. 2021). Rule 60(b)(6), on the other hand, "is a catch-all provision that authorizes a court to grant relief from a final judgment for 'any . . . reason' other than those listed elsewhere in the Rule." *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014) (alteration in original). However, "courts are to dispense their broad powers under [Rule] 60(b)(6) only in 'extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur.'" *Id.* (citation omitted). The Third Circuit has emphasized that "Rule 60(b) is not a substitute for appeal." *Singleton*, 839 F. App'x at 673 (citation and internal quotation marks omitted).

## III. DISCUSSION

Plaintiff argues that "the Court entered judgment as a matter of law in favor of the County Defendants and Aviles in error" and that as such, "Plaintiff is entitled to relief." Mov. Br. 2.

---

[4] Plaintiff also filed a Notice of Appeal with the Third Circuit, which is currently stayed pending the resolution of this Motion. ECF No. 227.

3

## A. Rule 50(a)

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party [or] grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a). Such a motion should only be granted "if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citation and internal quotation marks omitted). However, "federal courts do not follow the rule that a scintilla of evidence is enough. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993) (citation and internal quotation marks omitted).

## B. *Monell* Liability

"A municipality may not be held liable under § 1983 for the constitutional torts of its employees by virtue of *respondeat superior*. Rather, a municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (first citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978); and then citing *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005)). However, "[n]ot all state action rises to the level of a custom or policy." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). "A policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict[,]" while "[a] custom is an act that has not been formally approved by an appropriate decisionmaker, but . . . is so widespread as to have the force of law." *Id.* (citations, alterations, and internal quotation marks omitted). "A municipality's policy or custom can be established by an authorized policymaker's approval of a subordinate's decision and the basis for it." *Von Rhine v. Camden Cnty. Sheriff's Off.*, No. CIV. 09-6093, 2012 WL 3776026, at *11 (D.N.J. Aug. 29, 2012) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)); *see also Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) ("Plaintiffs have the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom. We have also held that, at a minimum, the government must act with deliberate indifference to the purported constitutional deprivation in order to ground liability." (citations omitted)).

4

"However, proof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action. A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.* In *Natale*, the Third Circuit identified three situations in which such a causal link could be shown:

> (1) The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. (2) The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. (3) Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

318 F.3d at 584 (alteration in original) (footnote, citations, and internal quotation marks omitted) (numbers added).

### C. Analysis

In his brief, Plaintiff does not argue that there has been an intervening change in law or that new evidence is available. Instead, Plaintiff argues that because "[t]here exists sufficient evidence in the record on the issue of Defendants' liability under *Monell*," he is entitled to relief from the Court's order granting judgment as a matter of law in favor of Aviles and the County Defendants. Mov. Br. 2, 6.

Prior to trial, the parties stipulated that Aviles served as the final policy-making authority for purposes of the County Defendants' *Monell* liability in this matter. Mov. Br. 3; Stipulation, ECF No. 96. As such, Plaintiff asserts two theories of *Monell* liability against Aviles and the County Defendants. Namely, Plaintiff argues that (1) Aviles directly violated Plaintiff's constitutional rights by failing to address his wiretapping allegations against Eady; and (2) Aviles is liable because he was "deliberately indifferent" towards Eady's illegal and retaliatory conduct—despite being aware of it—by allowing Eady to remain engaged in union-related issues. Mov. Br. 4, 6. In support of his assertions, Plaintiff claims that the following facts in the record[5] would allow a reasonable jury to find Aviles and the County Defendants liable under *Monell*:

> (1) Aviles admitted that Eady's conduct was "illegal" and "concerning;"

---

[5] Notably, Plaintiff does not cite to any part of the trial transcripts or exhibits in his submissions.

5

(2) There is no explanation for the two-month delay between the issuance of the SCI Report regarding full union release time in May 2012 and Defendants' revocation of it in July 2012, other than the fact that Plaintiff was re-elected as President of the PBA 109 in a June 2012 election that Aviles, Eady, and counsel for Hudson County were monitoring;

(3) Aviles lied to the County Freeholders about his keeping Eady engaged in union-related issues and Aviles maintained that he does not take direction from the Freeholders;

(4) Aviles emailed Eady after the FBI's execution of the search warrant in March 2013 telling him to "hang in there and stay strong" and that Aviles did not want the union to think that Eady "was out of the process;"

(5) Eady admitted to Aviles after the execution of the search warrant that he used the "Evil Operator" application to wiretap union officials after previously denying that he had done so, but Aviles nonetheless took no action against Eady;

(6) Eady boasted to the FBI confidential informant during their phone conversations that Aviles was liable because he allowed Eady to engage in the retaliatory and harassing conduct against Plaintiff, including the revocation of union release time.

Mov. Br. 6-7. Notably, Plaintiff raises no new facts that were not brought up during oral argument for Defendants' Rule 50(a) motion. The majority of these facts were explicitly considered by the Court. *See, e.g.*, Tr. Vol. 6; 958:20-22 (Aviles stating that the allegations against Eady in the August 2012 notice of claim, if true, were "illegal and concerning"); 963:3-969:3 (release time decision); 985:22-986:7 (Aviles' communication with a County Freeholder regarding Eady's involvement with the union); 961:13-16; 972:22-973:12 (Aviles' email to Eady after the execution of the search warrant); 945:6-8; 961:2-6 (Eady's admission to Aviles regarding his use of the Evil Operator application); 958:16-19 (Eady telling a confidential informant that Aviles was liable for retaliation). After considering these facts, the Court held that it did not "see that the evidence in this case would support a claim of deliberate indifference or that Aviles in some way was conspiring with Eady to do whatever Eady was doing." Tr. Vol. 6, 987:16-19.

The Court declines to disturb its ruling on these issues, as Plaintiff has failed to demonstrate any circumstances resulting from the Court's ruling that would entitle him to relief under Rules 59 and 60.

### 1. *Wiretapping Allegations*

On August 15, 2012, Plaintiff's lawyer at the time, Kevin S. Smith, sent a notice of tort claim ("Notice") containing allegations of wiretapping against Eady to Donato Battista ("Battista"), counsel for Hudson County. Ex. P-19. Plaintiff notes that upon Aviles' receipt of the Notice, Aviles stated that the allegations in the Notice, if true, were "illegal and

6

concerning." Tr. Vol. 6; 958:20-22. To the extent that Plaintiff points to this fact to argue that Aviles and the County Defendants "failed to address" the allegations in the Notice, Mov. Br. 4, the record fails to reasonably support this claim. As the Court previously found, the County Defendants took concrete action to address the Notice's allegations. *See* Tr. Vol. 6, 986:25-987:15. On August 21, 2012—five days after the date on the Notice—counsel for Hudson County responded to Mr. Smith. Ex. D-29. County counsel then followed up regularly with Mr. Smith for over seven months until he responded for the first time in April 2013 and declined to provide any further information to the County Defendants due to the FBI's ongoing criminal investigation of Eady. Exs. D-30 to D-33.

Further, the record does not support a sufficient causal connection between Aviles' alleged indifference to the Notice and Eady's retaliatory wiretapping conduct because no wiretapping is alleged to have occurred after Aviles received the Notice in August 2012. *See* Ex. P-83; *cf. Bradley v. Atl. City Bd. of Educ.*, 736 F. Supp. 2d 891, 897 (D.N.J. 2010) (finding no causal connection between alleged adverse employment actions and protected activity where actions occurred prior to alleged protected activity).

Plaintiff's allegations regarding Aviles' lack of action in response to Eady's admission that he used the Evil Operator application to wiretap union officials after the FBI executed a search warrant against him in March 2013, Mov. Br. 7, falls flat for the same reason. No wiretapping is alleged to have occurred after the search warrant was executed.

### 2. Release Time

As President of PBA Local 109, Plaintiff was given "release time" from his work duties to attend to union business on a full-time basis. However, on July 19, 2012, Eady issued a written memorandum announcing that the practice of full release time for the President of PBA Local 109 was being revoked. Ex. P-9. The memorandum further stated that Plaintiff would be required to report to duty in the jail for the 6:00 AM to 2:00 PM shift. *Id.*

During oral argument for Defendants' Rule 50(a) motions, the Court ruled that a reasonable jury could not find the revocation of release time to be a retaliatory act. Tr. Vol. 6, 966:1-3. However, Plaintiff argues in his moving brief that the revocation *was* retaliatory, and that Aviles and the County Defendants are liable under *Monell* for allowing Eady to be involved in the decision to revoke the practice. Mov. Br. 7. However, such arguments are unsupported by the record. In May 2012, the New Jersey State Commission of Investigation ("SCI") issued a report recommending that state entities curtail their practice of full union release time, partly due to the large financial burden that it put on taxpayers. Ex. D-21. Battista testified that he received the report that month and consulted with Aviles and other attorneys in his office. Tr. Vol. 5, 867:11-868:22; 892:6-8. On May 11, 2012, Aviles emailed Battista recommending that full release time be revoked for the

7

PBA 109 President. Ex. D-23. Battista testified that after further meetings with county officials, the County Executive ultimately made the final decision to rescind the practice. Tr. Vol. 5, 867:11-868:17. Plaintiff was advised of this decision when he received Eady's memorandum on July 19, 2012.

Notably, Plaintiff was re-elected as President of PBA Local 109 on June 29, 2012, Tr. Vol. 4, 566:16-18, over one month after Aviles first recommended the revocation of full release time for the PBA Local 109 President to Hudson County counsel. Plaintiff argues that the decision to revoke release time was retaliatory because "there is no explanation for the two month delay" between the issuance of the SCI Report in May 2012 and the revocation of the practice in July 2012, other than Plaintiff's re-election in June of that year. Mov. Br. 7. However, this argument is mere speculation. *Cf. Von Rhine v. Camden Cnty. Sheriff's Off.*, No. CIV. 09-6093, 2012 WL 3776026, at *7 (D.N.J. Aug. 29, 2012) (holding, on motion for summary judgment, that speculation fails to raise a triable issue). Plaintiff also contends that Aviles, Eady, and Hudson County counsel were "monitoring" the union election because on the night of the election, Battista emailed Aviles and Eady to ask who won, to which Eady replied, "Ocasio won again." Ex. P-45; Mov. Br. 7. To the extent that Plaintiff asserts that this evidence suggests that the decision to revoke release time was retaliatory, this evidence is too speculative and attenuated to establish a causal link between the revocation and any deprivation of Plaintiff's rights.

Plaintiff's argument that Aviles is liable because "Eady boasted to the FBI Confidential [I]nformant during their phone conversations that Aviles . . . allowed Eady to engage in the retaliatory and harassing conduct against Plaintiff, including the revocation of union release time[,]" is similarly conclusory and unsupported by the record. Mov. Br. 7. Plaintiff cites to no other evidence suggesting that Eady was involved in making the final decision to revoke release time for the PBA Local 109 President.

### 3. Involvement in Union Decisions

Plaintiff's contentions that Aviles kept Eady engaged in union-related issues after the FBI's execution of the search warrant against Eady in March 2013, despite telling a County Freeholder that Eady would no longer be involved, also fails to establish *Monell* liability.

In his moving brief, Plaintiff fails to cite to any retaliatory conduct that occurred against him that resulted from Aviles' alleged inaction. During oral argument, Plaintiff largely referred to a few instances where Eady denied or did not reply to union officers' requests for leave to attend meetings for union business. Ex. P-57 (denying Plaintiff's request to attend a County Freeholders meeting in August 2012); Ex. P-11 (failing to respond to officers' request for a monthly executive board meeting until after the meeting had already occurred because he heard that the meeting had been cancelled, and stating that the officers' pay would be docked for attending the meeting without proper approval before learning that the officers' supervisors gave them approval to attend). A third exhibit shows that in April 2013, Eady approved only four of the eight hours requested for the

8

monthly meeting. Ex. P-36. The exchange was forwarded to County Freeholder William O'Dea, who asked Aviles why Eady was handling the request. *Id.* A county administrator noted that Aviles had advised Eady to not engage in these activities, and later in the exchange, Aviles confirmed that he "[j]ust clarified his directive [to Eady and that Eady] acknowledged [it] and will comply not to engage in any union business, and/or discipline." *Id.*

When presented with the above evidence during oral argument, the Court noted that Eady's "interaction with the unions [after the notice of tort claim and execution of the search warrant] was minimal," Tr. Vol. 6, 985:12-14, and observed that "[t]here's no email where [Eady was] involved with grievances, hearings or negotiations with the unions[,]" Tr. Vol. 6, 985:18-20. Thus, the Court found that the emails that Plaintiff relied "on to argue that Aviles was liable . . . under a *Monell* theory of oversight [by] complying or agreeing with whatever Eady was doing [were] so minimal, so mundane that the Court [could not] conclude that a reasonable jury would find him liable under a *Monell* theory." Tr. Vol. 6, 986:8-12 (emphasis added). As such, the Court concluded that there was "no evidence [that] there was a deliberate indifference by Aviles." Tr. Vol. 6, 986:13-14.

The Court will not disturb its prior ruling on this issue. First, the state action alleged by Plaintiff—namely, that Aviles allowed Eady to remain engaged in approving union leave requests—does not rise to the level of a custom or policy. Plaintiff points to no evidence suggesting that Aviles approved both Eady's decisions to push back on the union officers' requests for leave *and* the bases for these decisions. *See Von Rhine*, 2012 WL 3776026, at *8, *11 (holding that evidence of a supervisor knowing that a subordinate was angry because of a union's actions did not raise a dispute of fact that the supervisor had notice of or acquiesced to any retaliatory action taken by the subordinate against plaintiff union member); *see also Ecotone Farm LLC v. Ward*, 639 F. App'x 118, 127 (3d Cir. 2016) (holding that a committee cannot be said to have approved a town engineer's "specific decisions and bases for them merely because it reappointed him as municipal engineer with awareness of complaints about his conduct").

Further, even assuming that Aviles could be said to have acquiesced to Eady's actions towards the union officials, any conduct that resulted is *de minimis*. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) ("The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimis*." (citation and internal quotation marks omitted)). A reasonable jury could not find that one shortened monthly executive board meeting and one instance where Plaintiff was not granted leave to attend a Freeholder's meeting would be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights[.]" *Id.* (citation and internal quotation marks omitted); *see also Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) ("In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.").

In sum, Plaintiff's attempts to re-hash the same arguments that he made at trial is inappropriate at this juncture. The evidence in the record is insufficient for a reasonable jury to find *Monell* liability against Aviles and the County Defendants.[6] As such, the Court will not disturb its ruling.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion is **DENIED**. An appropriate order follows.

Date: July 18, 2023

WILLIAM J. MARTINI, U.S.D.J.

---

[6] Though not discussed at length in Plaintiff's submissions, any supervisory liability claims against Aviles in his individual capacity lack merit for substantially similar reasons. "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Zisa v. Haviland*, No. CV 17-5551, 2020 WL 1527862, at *9 (D.N.J. Mar. 31, 2020) (alteration in original) (internal quotation marks omitted) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). To establish a claim, "a plaintiff must allege a causal connection between the supervisor's direction and that violation, or, in other words, proximate causation." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). As discussed *supra*, Plaintiff does not cite to any conduct by Aviles suggesting that he approved of Eady's retaliatory conduct or that he proximately caused conduct that deprived Plaintiff of his rights.