**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LUIS OCASIO,**<br>**Plaintiff,**<br>**v.**<br>**COUNTY OF HUDSON; HUDSON COUNTY DEPARTMENT OF CORRECTIONS; KIRK EADY,** ***individually and in his official capacity as Deputy Director of Hudson County Department of Corrections*****; OSCAR AVILES** ***individually,***<br>**Defendants.** | Civ. No. 2:14-CV-811 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Currently before the Court are Plaintiff Luis Ocasio's post-trial Motions for Attorneys' Fees and Costs as a Prevailing Plaintiff ("Attorneys' Fees Motion"), ECF No. 229, and to Mold the Verdict to Account for the Adverse Tax Consequences of a Lump Sum Award ("Tax Motion"), ECF No. 231. This opinion is issued without oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions and for the reasons set forth below, Plaintiff's Attorneys' Fees Motion is **GRANTED** for **$482,731.50** in attorneys' fees and **$36,779.03** in costs. Plaintiff's Tax Motion is **DENIED WITHOUT PREJUDICE**.

## I. RELEVANT BACKGROUND

The facts and procedural history of this matter are set forth in more specificity in the Court's July 18, 2023 Opinion. ECF No. 251. The Court states below only the procedural history that is pertinent to the instant motions.

Plaintiff Luis Ocasio commenced this lawsuit with four others in February 2014. ECF. No. 1. In September 2016, the parties agreed to dismiss the case without prejudice. ECF No. 66. In September 2017, Plaintiff amended and re-filed his complaint as the sole plaintiff. ECF No. 68. Plaintiff also retained new counsel, Sciarra & Catrambone, LLC, who ultimately took the case to trial. ECF No. 67. On February 1, 2023, a jury found judgment in favor of Plaintiff on his claims against Defendant Kirk Eady alleging the violation of Plaintiff's free speech, association, and union rights under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq*. ECF Nos. 223-

24. Plaintiff was awarded $417,000.00 in back pay, $95,000.00 in future pay, and $150,000.00 in non-economic damages. *Id.*

On February 24, 2023, Plaintiff submitted the instant fee petition seeking attorneys' fees and costs for services rendered by Sciarra & Catrambone, LLC dating back to May 3, 2017. Attorneys' Fees Motion, ECF No. 229. Eady filed an opposition brief ("Opp. Br.") ten days later. ECF No. 236. Plaintiff then filed a reply brief ("Reply Br.") seeking additional compensation for hours expended on both the fee petition and his motion to mold the verdict for tax consequences. ECF No. 239. In total, Plaintiff seeks $804,592.50 in attorney fees with a 35% contingency enhancement, for a total requested attorney fee award of $1,086,199.88. Plaintiff also seeks $36,779.03 in costs. Reply Br. ¶¶ 17-19.

On February 27, 2023, Plaintiff filed a motion to mold the verdict to account for the adverse tax consequences of his lump-sum economic damages award. Tax Motion, ECF No. 231. Specifically, Plaintiff seeks an additional $160,816.00 to account for the purported adverse tax consequences, for a total economic damages verdict of $672,816.00. Tax Motion Mov. Br. 4, ECF No. 231-1. Eady did not file a brief in opposition.

## II. LEGAL ANALYSIS

42 U.S.C. § 1988 provides that a prevailing party in certain civil rights actions, including actions under Section 1983, may recover a reasonable attorney's fee as part of the costs. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). The NJCRA similarly provides for such fees and costs. N.J.S.A. 10:6-2(f). "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 559 U.S. at 552. For both state and federal fee-shifting statutes, the "lodestar" method provides the starting point for determining a reasonable fee. See *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001); *Rendine v. Pantzer*, 661 A.2d 1202, 1216 (N.J. 1995). Courts determine the lodestar "by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable" and must submit evidence to support its claims. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). An opposing party must object with sufficient specificity to any request for fees. *Id.* "Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable." *Id.* "In reviewing a fee application, a district court must conduct 'a thorough and searching analysis.'" *Id.* (citation omitted). Notably, however, the Third Circuit has held that district courts "may not reduce an award *sua sponte*. Reductions are only appropriate in response to specific objections made by the opposing party." *Stadler v. Abrams*, No. CV 13-2741, 2018 WL 3617967, at *2 (D.N.J. July 30, 2018) (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir. 1989)).

**A. Reasonable Rate**

Three partners from Sciarra & Catrambone, LLC are listed on the invoice submitted in Plaintiff's fee petition: Jeffrey D. Catrambone, Charles J. Sciarra, and Matthew R. Curran.[1] Catrambone Cert., Ex. C, ECF No. 229-5. Plaintiff seeks an hourly rate of $650 for both Mr. Catrambone and Mr. Sciarra and a billing rate of $505 for Mr. Curran. Catrambone Cert. ¶ 50, ECF No. 229-2. Eady does not dispute these rates in his opposition brief, and upon review of Plaintiff's submissions, the Court finds that Plaintiff's requested rates are reasonable.

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). "The court 'should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (citation omitted). "The party seeking fees 'bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits . . . that the requested hourly rates meet this standard.'" *Interfaith Cmty. Org.*, 426 F.3d at 708 (citation omitted) (alterations in original); *see also Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) (holding that where a defendant does not oppose plaintiff's *prima facie* showing with respect to the appropriate rate, the plaintiff must be awarded the requested rate).

Plaintiff first supports its requested hourly rates by attaching the fee schedule of Community Legal Services of Philadelphia ("CLS"), which "has been approvingly cited by the Third Circuit[.]" *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (citations and internal quotation marks omitted).[2] The cited fee schedule lists an hourly rate of $650-700 for attorneys with more than 25 years of experience and $475-530 for attorneys with 16-20 years of experience. Catrambone Cert., Ex. B (Curran Cert., Ex. 4), ECF No. 229-4. The Court takes judicial notice that the fee schedule submitted by Plaintiff appears to be outdated. CLS increased the ranges listed in their fee schedule on January 19, 2023.[3] When determining the relevant market rate, the Court must consider "the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni v. New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001). In this case, Plaintiff filed his fee petition on February 24, 2023. However, because Plaintiff has not provided any support for CLS's updated rates, the Court will consider the fee schedule that was included in his submission. In addition to the fee schedule, Plaintiff supports his petition with affidavits from lawyers,

[1] The Court will not award the $40.00 in fees charged by an individual identified as "FC," as the Court has not identified any significant reference to this individual in Plaintiff's submissions and thus cannot assess the reasonableness of the charge. Catrambone Cert., Ex. C at 1, ECF No. 229-5.

[2] While the CLS fee schedule is predominantly related to the Philadelphia market, courts in the Newark vicinage of the District of New Jersey have considered it as a benchmark as well. *See, e.g., MCO & EA LLC v. Silver Globe Inc.*, No. CV 20-17100, 2023 WL 3478466, at *4 (D.N.J. May 15, 2023) (Chesler, J.).

[3] CLS PHILADELPHIA, *Attorney Fees*, https://clsphila.org/about-community-legal-services/attorney-fees (last visited August 4, 2023).

including one from Nancy Erika Smith. Ms. Smith, who has been a labor and employment attorney for over forty years and charges an hourly rate of $850 for her services, certifies that the rates charged by Plaintiff's counsel are reasonable in New Jersey for their years of experience. Catrambone Cert., Ex. D ¶¶ 2, 50-53, ECF No. 229-6.

Plaintiff's requested rates also appear to fall within the range of rates awarded in recent employment and civil rights cases in New Jersey. *See, e.g.*, *Americans for Prosperity v. Grewal*, No. 319CV14228, 2021 WL 1153194 (D.N.J. Mar. 26, 2021) (awarding large law firm $580 for 16-20 years' experience and $750 for over 25 years' experience after upwardly adjusting the CLS fee schedule to account for the central New Jersey market); *Stadler v. Abrams*, No. CV 13-2741, 2018 WL 3617967 (D.N.J. July 30, 2018) (finding hourly rate of $495 reasonable for civil rights lawyer with 19 years of experience); *Asta Funding, Inc. v. Neal*, No. CV 14-2495, 2017 WL 4330362, at *10 (D.N.J. Sept. 29, 2017) (finding hourly rate of $595 reasonable for an employment lawyer with 35 years of experience).

Thus, the Court finds that Plaintiff has sufficiently shown that its requested hourly rates—$650 for Mr. Catrambone and Mr. Sciarra, and $505 for Mr. Curran—are reasonable. These rates will be utilized in the Court's lodestar calculation.

### B. Reasonable Number of Hours

While Eady does not object to Plaintiff's requested hourly rates, he does object to the number of hours expended on unsuccessful claims, the number of hours counsel spent conferencing with each other, and the imposition of a 35% contingency fee enhancement.

#### *1. Unsuccessful Claims*

Eady first argues that Plaintiff should not receive fees for time spent litigating claims against Defendants Oscar Aviles, Hudson County, and the Hudson County Department of Corrections, who were dismissed from the case after the Court granted judgment as a matter of law in their favor at the close of evidence. Specifically, Eady points to the significant amount of time Plaintiff's counsel spent litigating *Monell* liability against the dismissed parties and punitive damages as to Oscar Aviles. Opp. Br. 4. In response to Eady's objections, Plaintiff notes that he was substantially successful in his claims—obtaining full economic damages and significant emotional distress damages—and thus his fees should not be reduced. Reply Br. ¶¶ 4-5.

On this topic, the Third Circuit has held that:

> A defendant should not be required to compensate a plaintiff for attorney hours devoted to the case against other defendants . . . who are found not to be liable. However, attorney hours "fairly devoted" to one defendant that also support the claims against other defendants are compensable. Thus, hours chargeable to the claims against defendants who are found not liable are

> chargeable to defendants against whom plaintiff prevailed if plaintiff can establish that such hours also were fairly devoted to the prosecution of the claims against the defendants over whom plaintiff prevailed.

*Rode v. Dellarciprete*, 892 F.2d 1177, 1185-86 (3d Cir. 1990) (citations omitted) (cleaned up). A substantial portion of Plaintiff's case at trial was devoted towards establishing *Monell* liability against Aviles, Hudson County, and the Hudson County Department of Corrections, which the Court found to be a stretch of a case unsupported by the evidence presented. Having had the benefit of hearing all the evidence at trial, the Court can reasonably conclude that a similarly substantial portion of counsel's trial preparation was dedicated in pursuit of these ultimately unsuccessful claims as well. Further, Plaintiff's claims against Eady were extremely strong. Two years before Plaintiff's counsel became involved in this case, Eady was convicted of one count of illegal wiretapping. Tr. Vol. 4, 693:3-8. The conviction was based upon the same facts underlying this case, and Plaintiff Ocasio testified at Eady's trial. Tr. Vol. 3, 302:17-19. In addition to exhibits and transcripts from the criminal trial, Plaintiff's case benefitted from recordings taken by an FBI confidential informant who taped Eady expressing his dislike of Plaintiff in explicit terms. As such, the Court can reasonably conclude that Plaintiff's claims against Eady required only a fraction of the total preparation and trial time claimed in Plaintiff's fee petition.

Accounting for the strength of Plaintiff's claims against Eady and the substantial amount of time spent by counsel on Plaintiff's unsuccessful claims against Aviles, Hudson County, and the Hudson County Department of Corrections, the Court is satisfied that a 30% reduction in Plaintiff's requested legal fees is appropriate.

#### 2. *Excessive Conferencing*

Eady next argues that the fee awarded to Plaintiff's counsel should be reduced for excessive time conferencing with each other. Opp. Br. 4-5.

"Courts may reduce the number of hours attorneys in a firm bill for communication with co-counsel if, based on the facts of a particular case, the court finds that the hours billed are unreasonable. While there can be value of attorney communication and conferencing in preparation and daily management of a lawsuit, nevertheless constant conferencing can be excessive." *In re Johnson & Johnson Derivative Litig.*, No. 10-2033, 2013 WL 11228425, at *41 (D.N.J. June 13, 2013) (citation and internal quotation marks omitted).

Eady points out that Plaintiff's invoice refers to conferences between co-counsel more than 200 times. Opp. Br. 4. After removing entries relating to *Monell* or punitive damages for Oscar Aviles, the Court agrees that nearly 250 entries—out of almost 900—refer to conferences between "co-counsel" or any combination of Mr. Catrambone, Mr. Sciarra, and Mr. Curran, comprising approximately 230 hours in time entries and $150,000 in legal fees. However, given that the time entries group the conferences with other tasks that were performed, it is not possible to discern the amount solely dedicated to

conferencing. The Court finds these entries excessive, given that Mr. Catrambone, Mr. Sciarra, and Mr. Curran are all partners at their firm and, as discussed *supra* in Section II(A), are extremely experienced employment and civil rights litigators. Each attorney should be able to work independently to a greater extent than is showcased by this invoice. Most entries regarding conferencing were submitted by Mr. Catrambone, who appeared to report to Mr. Sciarra at least every few days. *See In re Johnson & Johnson Derivative Litig.*, 2013 WL 11228425, at *42 (removing time for a superfluous attorney after considering in part that law firm was comprised of three lawyers each with over twenty years' experience and that two of the lawyers seemed to report every task performed to one of the named partners).

Approximately 25% of the time entries submitted by Plaintiff's counsel—and 20% of the legal fees—relate to a conference. However, because it is not possible from the face of the invoice to extract only the time spent conferencing, the Court will reduce the total fee amount by 10%. In making this reduction, the Court accounts for the likelihood that some conferences invoiced by counsel were necessary and not excessive.

*3. Contingency Enhancement*

Lastly, Eady objects to Plaintiff's request for a 35% contingency fee enhancement. Plaintiff argues that such an enhancement should be awarded given the significant risk of nonpayment both inherent in employment-civil rights matters generally and under the circumstances of this case specifically. Attorneys' Fee Motion Mov. Br. 15, ECF No. 229-1. Eady contends that such an enhancement is excessive given the strength of Plaintiff's claims against him. Opp. Br. 5-6.

"Contingency enhancements generally are not available under federal fee-shifting statutes." *Hightower v. Ingerman Mgmt. Co.*, No. CV 17-08025, 2022 WL 17543310, at *1 (D.N.J. Dec. 2, 2022) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554-57 (2010)). However, the Supreme Court of New Jersey has instructed trial courts awarding attorneys' fees under state fee-shifting statutes to "consider whether to increase [the lodestar] fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." *Rendine v. Pantzer*, 661 A.2d 1202, 1228 (N.J. 1995). Thus, because Plaintiff prevailed under the NJCRA in addition to his § 1983 claims, the Court must consider the possible application of a contingency enhancement. *See Lanni v. New Jersey*, 259 F.3d 146, 148-49, 152 (3d Cir. 2001) ("Where plaintiffs have prevailed on [New Jersey Law Against Discrimination] claims in federal court, we have approved of *Rendine* enhancements and required District Courts to consider their possible application."); *Comm. of Petitioners to Protest Adoption of Ordinance No. 2016-01 v. Borough of Belmar*, No. A-2869-16T1, 2019 WL 1787458 (N.J. Super. Ct. App. Div. Apr. 24, 2019) (applying contingency enhancement to fees awarded under the NJCRA).

However, "[b]ecause enhancements are not preordained, trial courts should not enhance fee awards as a matter of course." *New Jerseyans for Death Penalty Moratorium*

*v. New Jersey Dep't of Corr.*, 883 A.2d 329, 340 (N.J. 2005). When considering whether to award an enhancement, the Court must "determine whether a case was taken on a contingent basis, whether the attorney was able to mitigate the risk of nonpayment in any way, and whether other economic risks were aggravated by the contingency of payment." *Walker v. Giuffre*, 35 A.3d 1177, 1185 (N.J. 2012) (internal quotation marks omitted) (quoting *Rendine*, 661 A.2d at 1229). "[C]ourts may also consider such questions as the strength of the claim, proof problems, and the likelihood of success, because all of those may operate as disincentives to attorneys that the fee-shifting mechanism is designed to counteract." *Id.* An especially vigorous defense may also increase the risk of nonpayment. *Rendine*, 661 A.2d at 1232. Regarding the range of enhancements awarded, the New Jersey Supreme Court has concluded that "contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar." *Id.* at 1231.

Considering the principles announced in *Rendine* and subsequent case law, the Court finds that a contingency enhancement is not appropriate. While Plaintiff's counsel was compensated on a predominantly contingent basis, they were able to partially mitigate the risk of nonpayment on several fronts.

First, Plaintiff Ocasio paid his counsel a static retainer fee of $25,000, plus the disbursements and expert costs on file, to demonstrate his commitment to his case. Attorneys' Fee Motion Mov. Br. 17; Catrambone Cert. ¶ 38, ECF No. 229-2. While this amounts to a small portion of the ultimate fees and costs claimed in his petition, "attorneys who are paid a portion of their reasonable hourly fee irrespective of result have partially mitigated the risk of nonpayment." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 535 (3d Cir. 1997) (internal quotation marks omitted) (quoting *Rendine,* 661 A.2d at 1229). Further, as discussed *supra*, Plainitff's claims against Eady were extremely strong and likely to succeed, thus decreasing counsel's risk of nonpayment in taking the case. Plaintiff argues that there was no "smoking gun" in this case, Attorneys' Fee Motion Mov. Br. 17, but the evidence stemming from Eady's criminal conviction is nearly as strong.

Plaintiff also argues that important policy interests are vindicated by this action. This factor is typically only considered in relation to whether an "exceptional" fee above the "typical" threshold should be awarded. *See Baughman v. U.S. Liab. Ins. Co.*, 723 F. Supp. 2d 741, 753 (D.N.J. 2010) (listing whether the result achieved was "significant and of broad public interest" as a requirement for the award of an "exceptional" enhancement). Nonetheless, the public interest vindicated here does not warrant the award of even a "typical" enhancement. While this action did vindicate Plaintiff's important free speech, association, and union rights, the results obtained were not significantly broad. The jury's verdict was largely limited to the parties involved in the case, and Plaintiff's claims against Hudson County, the Hudson County Department of Corrections, and Oscar Aviles, the former director of the prison, were not successful. Further, while the Court notes that Defendants Aviles, Hudson County, and the Hudson County Department of Corrections offered only nominal sums to Plaintiff during the context of settlement discussions—which

increased the likelihood of trial and nonpayment—Defendants' refusal to settle does not support the imposition of an enhancement since the Court ultimately found Plaintiff's claims against these parties to be unsupported by the evidence.

As such, the Court finds that a contingency enhancement is not appropriate in light of the circumstances of the case.

### C. Costs

Plaintiff also seeks $36,779.03 in costs. Reply Br. ¶ 19. In support of its request, Plaintiff submitted an invoice listing the date, name, and amount of each expense along with a certification from the firm's bookkeeper, Rose Cioffi, explaining how costs were recorded throughout the course of the litigation. Catrambone Cert., Exs. C, E, ECF No. 229-5, -7. Eady "takes no position on the award of costs." Opp. Br. 7. Finding the requested costs reasonable, the Court will award Plaintiff the requested amount.

### D. Total

In sum, the Court will award Plaintiff's counsel the following fees and costs:

| | |
|---|---|
| Plaintiff's requested lodestar | $804,592.50 |
| Reduction for time entry submitted by "FC" | -$40.00 |
| Total reduction for time spent on (1) claims against Aviles, Hudson County, and the Hudson County Department of Corrections (30%); (2) excessive conferencing (10%) | -40% |
| **Total lodestar** | **$482,731.50** |
| **Total costs awarded** | **$36,779.03** |

## III. MOTION TO MOLD JUDGMENT FOR TAX CONSEQUENCES

Plaintiff also filed a separate motion to mold the economic damages verdict to account for the adverse tax consequences of a lump sum award. ECF No. 231. Eady did not file a brief in opposition.

Because "backpay awards are taxable in the year paid," *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 898 (3d Cir. 1993), "employees may be subject to higher taxes if they receive a lump sum back pay award in a given year[,]" *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 441 (3d Cir. 2009). As such, the Third Circuit has held that in order to effectuate "the 'make whole' remedial purpose of the antidiscrimination statutes[,]" a district court "may award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create[.]" *Eshelman*, 554 F.3d at 442. District courts have also accounted for the tax burdens created by lump sum front pay awards as

well, though the Third Circuit has not explicitly ruled on the issue. *See also Kissinger v. Mennonite Home*, No. CV 20-3000, 2022 WL 596300, at *2 (E.D. Pa. Feb. 28, 2022) (collecting cases). However, a prevailing plaintiff in a discrimination case is not presumptively entitled to such relief, and the employee "continue[s] to bear the burden to show the extent of the injury they have suffered." *Eshelman*, 554 F.3d at 443. As such, the district court, using its "wide discretion to locate a just result, should grant relief in light of the circumstances peculiar to the case." *Id.* (citations omitted) (cleaned up).

At trial, the jury awarded Plaintiff with $417,000 in back pay and $95,000 in front pay, for a total of $512,000 in economic damages. ECF Nos. 223-24. In support of his motion, Plaintiff attaches a supplemental report from an economist, Kristin Kucsma, M.A., who opines that in order to account for any tax consequences arising from receiving the $512,000 as a lump sum, the economic damages verdict should be increased by $160,816.00, to a total of $672,816.00. Catrambone Cert., Ex. A, ECF No. 231-3. Plaintiff also attaches a certification from Ms. Kucsma attesting to the accuracy of her calculations. *Id.* at Ex. B, ECF No. 231-4. Notably, however, Plaintiff has not asserted that Eady has paid or will pay the entire lump sum in a single year. Because Eady is an individual defendant, the Court is mindful that it may not be possible for the entirety of the $512,000 to be paid at once. Therefore, Plaintiff's Tax Motion is **DENIED WITHOUT PREJUDICE**. Plaintiff may make a renewed request when he is able to show the extent of the tax burden that he has suffered due to the lump sum payment of his economic damages award. *See Huang v. Admin. Rev. Bd. U.S. Dep't of Lab.*, No. CIV.A. 12-0035, 2013 WL 4042008, at *7 (S.D. Tex. Aug. 8, 2013) (denying request for additional damages to compensate for tax consequences in part because plaintiff had not yet been paid the lump sum that would trigger the purported increased tax).

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Attorneys' Fees Motion is **GRANTED** for **$482,731.50** in attorneys' fees and **$36,779.03** in costs. Plaintiff's Tax Motion is **DENIED WITHOUT PREJUDICE.**

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 8, 2023**