UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS OCASIO,<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**COUNTY OF HUDSON; HUDSON COUNTY DEPARTMENT OF CORRECTIONS; KIRK EADY,** *individually and in his official capacity as Deputy Director of Hudson County Department of Corrections*; **OSCAR AVILES** *individually*,<br><br>　　　　**Defendants.** | Civ. No. 2:14-CV-811 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

　　On November 19, 2024, a jury returned a verdict in favor of Plaintiff Luis Ocasio, finding Defendants liable under the *Monell* doctrine. Before the Court are three post-trial motions. In their motion, Defendants request judgment in their favor as a matter of law pursuant to Federal Rule of Civil Procedure 50 or, in the alternative, a new trial pursuant to Rule 59 ("Defendants' Motion"). ECF No. 315. Plaintiff filed two post-trial motions: (1) a motion for attorneys' fees and costs ("Attorneys' Fees Motion"); and (2) a motion to mold the verdict to account for the adverse tax consequences of a lump sum award ("Tax Motion"). ECF Nos. 312 & 313. After careful consideration of the parties' submissions and for the reasons set forth below: (1) Defendants' Motion is **DENIED**; (2) Plaintiff's Attorneys' Fees Motion is **GRANTED** for **$1,066,365.50** in attorneys' fees and **$44,508.88** in costs; and (3) Plaintiff's Tax Motion is **GRANTED** to mold the economic damages verdict by an increase of **$156,296** (from $512,000 to $668,296) to account for adverse tax consequences.

### I.　BACKGROUND

　　The entire procedural history of this case is set forth in more specificity in the Court's prior opinions and need not be repeated at length here. *See* July 18, 2023 Opinion, ECF No. 251; August 8, 2023 Opinion, ECF No. 254. The Court provides only the facts pertinent to the instant motions. On November 14, 2024, a jury trial commenced on Plaintiff's claims against the County of Hudson ("Hudson County"), the Hudson County

1

Department of Corrections ("DOC"), and Oscar Aviles (collectively, "Defendants"). This trial centered on the events described below.

From 2010 to 2014, Plaintiff worked as a corrections officer at the DOC and served as President of the Policemen's Benevolent Association ("PBA") Local #109, a corrections officers' union. During this time, Oscar Aviles was Director of the DOC and supervised Kirk Eady, the Deputy Director, who was responsible for day-to-day staffing and managed relations with the union. Plaintiff claimed that Eady retaliated against him based upon his status as PBA President, causing Plaintiff to be constructively discharged from his position. Specifically, Plaintiff alleged that Eady denied Plaintiff's requests for leave to attend to union business, threatened Plaintiff by way of anonymous phone calls, and intercepted Plaintiff's calls using a device known as the "Evil Operator." In March 2013, after law enforcement was tipped off that Eady had admitted he had taped Plaintiff's calls, the FBI executed a search warrant of Eady's home and office.

In February 2014, Plaintiff filed a complaint against Defendants and Eady alleging, as relevant here, violation of his free speech, association, and union rights under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq*. Plaintiff argued that Defendants failed to sufficiently address Eady's conduct, rendering them liable for Eady's retaliatory acts under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). The parties first went to trial in January 2023.[1] At the close of evidence, Defendants moved for judgment as a matter of law pursuant to Rule 50(a). After oral argument, the Court issued an opinion granting judgment as a matter of law as to Hudson County, the DOC, and Aviles, dismissing all claims against them, but denied the motion as to Eady. ECF No. 217. On February 1, 2023, the jury returned a verdict against Eady.

Plaintiff subsequently appealed the grant of judgment as a matter of law as to Hudson County, the DOC, and Aviles, and, in June 2024, the Third Circuit reversed that decision and ordered a new trial—this trial—on Plaintiff's claims against Defendants. Importantly, prior to the start of this trial, the parties jointly stipulated to the following:

> The sole issue to be tried before the jury in the new trial is whether Defendants are liable for Plaintiff's claims under § 1983 and the New Jersey Civil Rights Act under *Monell v. Dept. of Social Services of N.Y.C.*, 436 U.S. 658 (1978), as contained in Counts Six and Eight of Plaintiff's Second Amended Complaint filed on September 7, 2017, with those claims having been presented to the jury as to [] Kirk Eady in the first trial and that jury having returned a verdict in Plaintiff's favor on those claims.

October 28, 2024 Joint Stipulation, ECF No. 274.

---

[1] Prior to the first trial, the parties jointly stipulated that Oscar Aviles was the relevant policymaker for purposes of *Monell* liability.

2

This trial commenced on November 14, 2024, and concluded four days later. *See* ECF Nos. 293-98. At the close of evidence, Defendants moved for judgment as a matter of law pursuant to Rule 50(a). *See* Tr. Vol. III, 582: 10-12, ECF No. 307. The Court denied the motion. *Id.* at 585-86. In rendering its verdict, the jury considered one question: "Do you find that Plaintiff Luis Ocasio has proven that it is more likely than not that the actions of Defendant Aviles or the inaction of Defendant Aviles (by way of deliberate indifference) caused Plaintiff's constitutional rights to be violated by Kirk Eady?" ECF No. 298. On November 19, 2024, the jury returned a unanimous verdict in Plaintiff's favor. *Id.* Plaintiff has been awarded a total of $662,000.00 in backpay, future pay, and economic damages recoverable from Defendants and Eady. ECF Nos. 223-24; 309. The parties' post-trial motions followed.

## II.   DEFENDANTS' MOTION

On January 7, 2025, Defendants timely filed a renewed motion for judgment as a matter of law under Rule 50. *See* Defs. Mot. ECF No. 315. In the alternative, they request a new trial pursuant to Rule 59. *Id.* On January 31, 2025, Plaintiff filed an opposition brief. Pl. Opp., ECF No. 320. Defendants submitted their reply on February 7, 2025. Defs. Reply, ECF No. 323. In their request for judgment as a matter of law, Defendants argue, *inter alia*, that to the extent the jury's verdict was "premised on the argument that Aviles failed to supervise Eady, and that failure allowed Eady to violate Plaintiff's First Amendment rights by wiretapping his phone, Plaintiff failed to present any evidence that Aviles had contemporaneous knowledge of Eady's actions and failed to supervise or control Eady so that he would cease and desist in wiretapping Plaintiff's phone." Defs. Mot. 10. As to their petition under Rule 59, Defendants seek a new trial for two reasons: (1) the jury's verdict is against the clear weight of evidence and (2) Plaintiff's counsel acted improperly and, in doing so, unfairly influenced the verdict. *Id.* at 15-16. Before turning to the parties' arguments, the Court addresses the relevant elements of municipal liability in Section 1983 actions under *Monell*, as well as the appropriate standards of review.

### A. *Monell* Liability

A municipality may not be held liable under *Monell* for the constitutional violations of its employees "by virtue of *respondeat superior*." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (citing *Monell*, 436 U.S. at 690). In other words, Defendants are not liable for Eady's misbehavior "merely because they exercised authority over him." *Ocasio v. Cnty. of Hudson*, No. 23-1336, 2024 WL 2843018, at *2 (3d Cir. June 5, 2024). Rather, they may only be held liable for the conduct of an individual employee or officer "when that conduct implements an official policy or practice." *Id.* To succeed on a First Amendment retaliation claim under § 1983, a plaintiff must show that they (1) engaged in constitutionally protected conduct, (2) suffered "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and (3) there exists

"a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006). Plaintiff, as PBA President, "clearly satisfies the first prong," but "[w]hether he satisfies the second and third prongs is less clear." *Ocasio*, 2024 WL 2843018, at *2. He must "show that his rights were violated pursuant to 'an official policy or practice' that can properly be laid at the feet of a county policymaker." *Id.* (internal citation omitted).

### B. Judgment as a Matter of Law

A court may grant judgment as a matter of law under Rule 50(a) only when it finds that a "reasonable jury would not have a legally sufficient evidentiary basis to find for the [moving] party on that issue." Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law should be granted "sparingly," and, in determining whether there exists a sufficient evidentiary basis to sustain liability, the court "may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Ocasio*, 2024 WL 2843018, at *1 (cleaned up). Accordingly, a motion under Rule 50(a), "should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citation and internal quotation marks omitted).

Defendants argue that they are entitled to judgment in their favor as a matter of law because no reasonable jury would have a legally sufficient evidentiary basis to find in favor of Plaintiff against Defendants. Defs. Mot. 5. They specifically assert that Plaintiff has failed to produce sufficient evidence from which a reasonable jury could find that any of Aviles' acts or omissions proximity caused Eady to violate Plaintiff's First Amendment rights. *Id.* at 5-6. Plaintiff, on the other hand, maintains that there exists sufficient evidence in the record that allowed the jury to reasonably find Defendants liable under the deliberate indifference rationale of *Monell*. Pl. Opp 17. For example, Plaintiff points to the fact that rather than address Eady's actions of retaliatory animus toward Plaintiff and the PBA—described in the August 2012 Notice of Tort Claim—and despite the FBI's executed search warrant in March 2013, Aviles took no action against Eady, allowing him to remain engaged in union-related issues on behalf of management. *Id.* Further, Aviles admitted on the stand that Eady's alleged conduct was concerning and potentially harassing, but neither he nor the DOC took significant action in response to the allegations of Eady's illegal wiretapping other than to (1) conclude that it would have been "impossible" for Eady to engage in this conduct and (2) accept Eady's denials that he "didn't do it or there's nothing there." *See id.*; Tr. Vol. III, 411:2-10, 414: 6-13; 415:20-21, 416:7-9, ECF No. 307. The Court agrees with Plaintiff that the record demonstrates that a reasonable jury would have a sufficient evidentiary basis to find for him and accordingly **DENIES** Defendants' motion for judgment as a matter of law in their favor.

### C. New Trial

4

Defendants request in the alternative a new trial under Rule 59, which provides that a court may grant a new jury trial "on all or some of the issues…for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "One reason a court may grant a new trial is if the jury's verdict is against the clear weight of the evidence, and a new trial is necessary to prevent a miscarriage of justice." *TQ Delta, LLC v. 2Wire, Inc.*, 486 F. Supp. 3d 803, 806 (D. Del. 2020) (cleaned up). Another is when improper conduct by an attorney or the court unfairly influenced the verdict. *See Zarow-Smith v. New Jersey Transit Rail Operations, Inc.*, 953 F. Supp. 581, 585 (D.N.J. 1997). Importantly, a new trial should be granted only where the verdict "cries out to be overturned" or "shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352–53 (3d Cir. 1991). In determining whether to grant a new trial, a court may not "substitute its judgment of the facts and the credibility of the witnesses for that of the jury." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016).

Defendants assert they are entitled to a new trial because (1) the verdict is against the clear weight of evidence and (2) Plaintiff's counsel unfairly influenced the verdict by acting improperly in various ways. Defs. Mot. 15-17. The Court has already found no basis for judgment as matter of law as to Defendants; accordingly, they are not entitled to a new trial under an even higher standard based on the allegation that the verdict cuts against the clear weight of evidence. So the Court need only address Defendants' petition for a new trial because of the purported "pervasive misconduct" of Plaintiff's counsel.[2] *Id.* at 16. According to Defendants, counsel for Plaintiff "violated the standard of proper argument" in numerous ways during the course of the four-day trial. *Id.* at 17. The alleged improprieties include counsel's (1) repeated references to prior adjudications of this matter in arguments to the jury, (2) behaviors outside the bounds of zealous advocacy, and (3) material misrepresentations of fact before jury. *Id.*

After considering the arguments, the Court is not convinced there is a reasonable probability that the actions of Plaintiff's counsel—even misconduct arguably contravening litigation norms—influenced the jury's verdict so that a new trial is warranted under Rule 59. For example, with respect to Mr. Sciarra's reference to the Third Circuit opinion—a comment that exceeded the bounds of proper advocacy—the Court finds no reasonable probability that the remark influenced the jury's verdict or rendered the trial unfair. *See Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992) (observing that isolated remarks must be assessed in the context of the entire trial). In this particular instance, Defendants did not request a curative instruction after making a general objection, further indicating that the comment was not perceived as so prejudicial as to undermine the integrity of the proceedings. *See* Tr. Vol. III, 474:1-7. Considering the record as a whole—

---

[2] Plaintiff retained Sciarra & Catrambone, LLC, which took the case to trial both times. Two partners at the firm, Jeffrey D. Catrambone and Charles J. Sciarra, represented Plaintiff in this trial.

5

including the strength of the evidence presented at trial—the Court concludes that any actual or perceived misconduct on the part of Plaintiff's counsel did not have a substantial influence on the jury's verdict. Accordingly, the Court **DENIES** Defendants' alternative request for a new trial under Rule 59.

### III.     ATTORNEYS' FEES MOTION

#### A. Relevant Procedural History

On February 24, 2023, following the first trial that resulted in a verdict against Kirk Eady, Plaintiff submitted a fee petition seeking attorneys' fees and costs for services rendered by Sciarra & Catrambone. ECF No. 229. In total, Plaintiff sought $804,592.50 in attorney fees with a 35 percent contingency enhancement, for a total requested attorney fee award of $1,086,199.88. This Court granted Plaintiff's attorneys' fees motion for $482,731.50, declining to apply the requested contingency enhancement and making reductions for hours expended on unsuccessful claims and excessive conferencing. *See* August 8, 2023 Opinion 6-8, ECF No. 254. Specifically, the Court made a 30 percent lodestar reduction because, at that time, Plaintiff had not prevailed against Defendants Hudson County, the DOC, and Aviles. *Id.* at 8. The Court awarded Plaintiff's counsel the following fees and costs:

| Plaintiff's requested lodestar | $804,592.50 |
|---|---|
| Reduction for time entry submitted by "FC" | -$40.00 |
| Total reduction for time spent on (1) claims against Aviles, Hudson County, and the Hudson County Department of Corrections (30%); (2) excessive conferencing (10%) | -40% |
| **Total lodestar** | **$482,731.50** |
| **Total costs awarded** | **$36,779.03** |

*Id.*

As noted, Plaintiff appealed the Court's earlier grant of judgment as a matter of law as to Hudson County, the DOC, and Aviles, and the Third Circuit subsequently ordered a new trial on Plaintiff's claims against these Defendants. On December 17, 2024, after the jury returned a verdict in Plaintiff's favor at the end of this trial, Plaintiff submitted the instant fee petition seeking attorneys' fees and costs for services rendered by the same firm. Pl. Mot., ECF No. 312. Notably, Plaintiff seeks fees and costs for services stretching back to May 3, 2017—as he did in his February 2023 petition following the first trial. *See id.* Sciarra Cert., Ex. D, ECF No. 312-6. Defendants filed an opposition brief arguing, *inter alia,* that Plaintiff claims hours not reasonably expended on this matter, particularly given

6

the existing fee award. Defs. Opp. 1-3, ECF No. 316. Plaintiff then filed a reply brief addressing those arguments and seeking additional compensation for hours expended on post-trial motions since December 17, 2024. Reply Br., ECF No. 239.

In total, Plaintiff now seeks **$1,549,097.00** in attorneys' fees with a 50 percent contingency enhancement for a total fee award of **$2,323,645.50**. *Id.* at 12. He also seeks **$44,509.88** in expenses and costs. *Id.*

### B. Standard of Review

42 U.S.C. § 1988 provides that a prevailing party in certain civil rights actions, including actions under Section 1983, may recover a reasonable attorneys' fees as part of the costs. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). The NJCRA similarly provides for such fees and costs. N.J.S.A. 10:6-2(f). "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 559 U.S. at 552. For both state and federal fee-shifting statutes, the "lodestar" method provides the starting point for determining a reasonable fee. See *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001); *Rendine v. Pantzer*, 661 A.2d 1202, 1216 (N.J. 1995). Courts determine the lodestar "by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A party requesting attorney fees "bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable" and must submit evidence to support its claims. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). An opposing party must object with sufficient specificity to any request for fees. *Id.* "Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable." *Id.* "In reviewing a fee application, a district court must conduct 'a thorough and searching analysis.'" *Id.* (citation omitted). Notably, however, the Third Circuit has held that district courts "may not reduce an award *sua sponte*. Reductions are only appropriate in response to specific objections made by the opposing party." *Stadler v. Abrams*, No. 13-2741, 2018 WL 3617967, at *2 (D.N.J. July 30, 2018) (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir. 1989)).

### C. Analysis

The Court highlights the following issues discussed in more detail below: (1) Plaintiff seeks fees and costs for legal services starting May 3, 2017; (2) Plaintiff was awarded a lodestar of $482,731.50 in August 2023; and (3) that initial lodestar had been reduced by 30 percent to account for then-unsuccessful claims against Defendants. The Court accordingly reviews the instant lodestar to account for, among other things, the existing fee award, the previous 30 percent reduction for unsuccessful claims, and the new fee-enhancement request.

### i. Hourly Rates

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). "The court 'should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (citation omitted). "The party seeking fees 'bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits . . . that the requested hourly rates meet this standard.'" *Interfaith Cmty. Org.*, 426 F.3d at 708 (citation omitted).

Here, three partners from Sciarra & Catrambone are listed on the invoice submitted in Plaintiff's fee petition: Mr. Sciarra, Mr. Catrambone, and Matthew R. Curran. Plaintiff seeks an hourly rate of $850 for both Mr. Sciarra and Mr. Catrambone and a billing rate of $615 for Mr. Curran. Defendants do not dispute these rates in their opposition brief, and upon review of Plaintiff's submissions, the Court finds that the requested rates are reasonable. *See Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) (holding that where a defendant does not oppose plaintiff's *prima facie* showing with respect to the appropriate rate, the plaintiff must be awarded the requested rate). Plaintiff substantiates his attorneys' hourly rates by attaching various supporting documents, including the updated fee schedule from Community Legal Services of Philadelphia ("CLS"), which "has been approvingly cited by the Third Circuit[.]" *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (citations and internal quotation marks omitted). The CLS schedule provides that an attorney with over 25 years of experience (like Mr. Sciarra and Mr. Catrambone) falls within the range of $735-850 per hour and that counsel with 16-20 years of experience (like Mr. Curran) falls within the range of $535-625 per hour. Based on this schedule, as well as the affidavits attached to the motion and consideration of comparable hourly rates, the Court finds that the rates sought by Plaintiff's counsel are reasonable.

### ii. Reasonableness of Hours Claimed

After a court ascertains a reasonable hourly rate, it must then determine whether the hours expended are also reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary," and must be excluded from the lodestar calculation. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Hensley*, 461 U.S. at 433). Defendants argue that Plaintiff claims billable hours not reasonably expended on this litigation. Defs. Opp. 1-3. They request that various sets of hours be excluded from the lodestar award, including, *inter alia*, (1) time spent on claims against Eady, noting these are redundant given the existing fee award and (2) other duplicative billing entries. *Id.* at 2-3. Defendants also seek

8

reductions for excessive conferencing and hours spent relating to claims upon which Plaintiff did not succeed. *Id.*

The Court agrees that a reduction from Plaintiff's current lodestar calculation must be made to account for the August 2023 fee award for legal services from the same firm. Otherwise, Plaintiff's attorneys would receive duplicate compensation for many of the same services. Accordingly, to prevent double dipping, the Court will deduct from this lodestar—which accounts for all legal services of Sciarra & Catrambone since May 2017—the existing fee award amount of $482,731.50. However, Defendants' other reduction requests are not convincing (nor are they particularly well developed). As noted, the Court, in its August 2023 lodestar calculation for the award against Kirk Eady, imposed a 30 percent reduction based upon "the substantial amount of time spent by counsel on Plaintiff's unsuccessful claims against Aviles, Hudson County, and the Hudson County Department of Corrections." August 8, 2023 Opinion 5. That rationale is clearly no longer applicable given the November 2024 jury verdict in Plaintiff's favor against those Defendants. *See also Hilburn v. New Jersey Dep't of Corr.*, No. 7-6064, 2012 WL 3864951, at *3 (D.N.J. Sept. 5, 2012) (observing that a plaintiff need not prevail on every contention raised in a lawsuit in order to collect attorneys' fees for counsel's efforts). Additionally, upon review of the record, the Court is satisfied that Plaintiff's invoices do not reflect excessive conferencing, or any other inordinate time spent on this litigation. As such, the Court will reduce Plaintiff's lodestar amount only by the existing fee award.

### iii. Contingency Enhancement

In its February 2023 attorneys' fees petition, Plaintiff sought a 35 percent contingency enhancement, arguing it should be awarded given the significant risk of nonpayment inherent in employment-civil rights matters and under the circumstances of this case. *See* February 2023 Attorneys' Fee Motion 15, ECF No. 229-1. This Court found that a contingency enhancement was not appropriate since, among other things, Plaintiff's attorneys were able to mitigate the risk of nonpayment, even though they were compensated on a predominantly contingent basis. *See* August 8, 2023 Opinion 6-8. In the instant motion, Plaintiff seeks a 50 percent contingency fee enhancement, largely for the same reasons but also in light of the fact that his counsel "fully vindicated [his] rights and obtained recovery against [] Defendants for Plaintiff's full economic and emotional distress damages, after prevailing on appeal." Pl. Mot. 23. Plaintiff highlights the following factors to justify the new enhancement request: (1) the specific factual difficulties in this matter; (2) Defendants' "no pay" settlement position; (3) the unique and protracted procedural history; and (4) public policy considerations. *Id.* at 26-27. Defendants object to Plaintiff's enhancement request, noting that Plaintiff has failed to "produce specific evidence that the quality of service rendered was superior or that the success was exceptional." Defs. Opp. 4. Defendants further note that Plaintiff has not offered exceptional circumstances that would justify this rare form of relief. *Id.*

9

As the Court observed in its August 8, 2023 Opinion, since Plaintiff prevailed under the NJCRA, the Court must consider the possible application of a contingency enhancement. *See Lanni v. New Jersey*, 259 F.3d 146, 148-49, 152 (3d Cir. 2001) ("Where plaintiffs have prevailed on [New Jersey Law Against Discrimination] claims in federal court, we have approved of *Rendine* enhancements and required District Courts to consider their possible application."); *Comm. of Petitioners to Protest Adoption of Ordinance No. 2016-01 v. Borough of Belmar*, No. A-2869-16T1, 2019 WL 1787458 (N.J. Super. Ct. App. Div. Apr. 24, 2019) (applying contingency enhancement to fees awarded under the NJCRA). However, "[b]ecause enhancements are not preordained, trial courts should not enhance fee awards as a matter of course." *New Jerseyans for Death Penalty Moratorium v. New Jersey Dep't of Corr.*, 883 A.2d 329, 340 (N.J. 2005). When considering whether to award an enhancement, the Court must "determine whether a case was taken on a contingent basis, whether the attorney was able to mitigate the risk of nonpayment in any way, and whether other economic risks were aggravated by the contingency of payment." *Walker v. Giuffre*, 35 A.3d 1177, 1185 (N.J. 2012) (internal quotation marks omitted) (quoting *Rendine*, 661 A.2d at 1229). "[C]ourts may also consider such questions as the strength of the claim, proof problems, and the likelihood of success, because all of those may operate as disincentives to attorneys that the fee-shifting mechanism is designed to counteract." *Id.* An especially vigorous defense may also increase the risk of nonpayment. *Rendine*, 661 A.2d at 1232. Regarding the range of enhancements awarded, the New Jersey Supreme Court has concluded that "contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar." *Id.* at 1231.

Reconsidering the principles announced in *Rendine*, the Court finds that a contingency enhancement—particularly one this extraordinary—is not appropriate. As already noted, Plaintiff paid his counsel a static retainer fee of $25,000, plus the disbursements and expert costs on file, to demonstrate his commitment to his case. *See* First Attorneys' Fee Motion 17; Catrambone Cert. ¶ 38, ECF No. 229-2; Pl. Mot. 24. "While this amounts to a small portion of the ultimate fees and costs claimed in his petition, attorneys who are paid a portion of their reasonable hourly fee irrespective of result have partially mitigated the risk of nonpayment." August 8, 2023 Opinion 7 (cleaned up). Moreover, Defendants' unwillingness to settle this matter should not be the basis for enhancement, particularly since this Court previously found Plaintiff's claims against Hudson County, the DOC, and Aviles to be unsupported by the evidence. And while Plaintiff's claims against these Defendants were ultimately successful, the results obtained were not particularly sweeping. Accordingly, the Court finds that a contingency enhancement is not appropriate in this case.

### i. Costs

Defendants do not object to Plaintiff's application for costs as excessive or duplicative, and the Court will not do Defendants' work for them and reduce costs *sua sponte*. The Court will accordingly grant Plaintiff the requested amount of **$44,508.88** in costs.

### ii. Total

In sum, the Court will award Plaintiff's counsel the following fees and costs:

| | |
|---|---|
| Plaintiff's requested lodestar | $1,549,097.00 |
| Total reduction for redundancy given the existing fee award | -$482,731.50 |
| **Total lodestar** | **$1,066,365.50** |
| **Total costs awarded** | **$44,508.88** |

## IV. TAX MOTION

### A. Relevant Procedural History

As a result of the two jury verdicts in its favor, Plaintiff has been awarded $417,000.00 in back pay and $95,000.00 in future pay, for a total of $512,000 in economic damages. ECF Nos. 223-24, 298, 309. On December 17, 2024, Plaintiff filed a motion to mold the economic damages verdict to account for the adverse tax consequences of a lump sum award. ECF No. 313. Plaintiff seeks an additional **$156,296.00** to account for the adverse tax consequences, as well as interest on the backpay award.[3] Pl. Mot. 5-6. Defendants did not oppose the motion. Previously, this Court denied Plaintiff's prior application to mold the verdict as to Kirk Eady, stating in relevant part:

> Plaintiff has not asserted that Eady has paid or will pay the entire lump sum in a single year. Because Eady is an individual defendant, the Court is mindful that it may not be possible for the entirety of the $512,000 to be paid at once. Therefore, Plaintiff's Tax Motion is DENIED WITHOUT PREJUDICE. Plaintiff may make a renewed request when he is able to show the extent of the tax burden that he has suffered due to the lump sum payment of his economic damages award.

August 8, 2023 Opinion 9.

### B. Analysis

---

[3] Plaintiff also seeks prejudgment and post-judgment interest. Pl. Mot. 5-7. The Court declines to rule on this issue at this time because the parties have not sufficiently briefed it. The parties may submit supplemental briefing if they wish the Court to address this question.

Because "backpay awards are taxable in the year paid," *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 898 (3d Cir. 1993), "employees may be subject to higher taxes if they receive a lump sum back pay award in a given year[,]" *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 441 (3d Cir. 2009). As such, the Third Circuit has held that in order to effectuate "the 'make whole' remedial purpose of the antidiscrimination statutes[,]" a district court "may award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create[.]" *Eshelman*, 554 F.3d at 442. District courts have also accounted for the tax burdens created by lump sum front pay awards as well. *See also Kissinger v. Mennonite Home*, No. 20-3000, 2022 WL 596300, at *2 (E.D. Pa. Feb. 28, 2022) (collecting cases). However, a prevailing plaintiff in a discrimination case is not presumptively entitled to such relief, and the employee "continue[s] to bear the burden to show the extent of the injury they have suffered." *Eshelman*, 554 F.3d at 443. As such, the district court, using its "wide discretion to locate a just result, should grant relief in light of the circumstances peculiar to the case." *Id.* (citations omitted) (cleaned up).

Here, Plaintiff's renewed request to mold the verdict demonstrates the tax burden he will suffer due to the lump sum payment of his economic damages award. In support of his motion, Plaintiff attaches a supplemental report from an economist, Kristin Kucsma, M.A., who states that in order to account for any tax consequences arising from receiving the $512,000 as a lump sum, the economic damages verdict should be increased by $156,296, to a total of $668,296. Catrambone Cert., Ex. A, ECF No. 313-3. Plaintiff also attaches a certification from Ms. Kucsma attesting to the accuracy of her calculations. *Id.* at Ex. C, ECF No. 313-5. Accordingly, the Court will **GRANT** Plaintiff's motion to mold the verdict to account for adverse tax consequences.

## V.     CONCLUSION

For the reasons stated above: (1) Defendants' Motion is **DENIED**; (2) Plaintiff's Attorneys' Fees Motion is **GRANTED** for **$1,066,365.50** in attorneys' fees and **$44,508.88** in costs; and (3) Plaintiff's Tax Motion is **GRANTED** to mold the economic damages verdict by an increase of **$156,296** (from $512,000 to $668,296) to account for adverse tax consequences. An appropriate order consistent with this opinion follows.

_____
WILLIAM J. MARTINI, U.S.D.J.

DATE: May ___, 2025